[No. 31693. Department One. August 16, 1951.]

CHAUNCEY LA LONE, *Respondent*, v. FRANK SMITH *et al.,*
*Appellants.*[1]

*Edge, Davenport & Edge, Grant L. Kimer, Jack R. Dean,*
and *Seaton M. Daly,* for appellants.

*Dressel & Lehan* and *Del Cary Smith,* for respondent.

[1]Reported in 234 P. (2d) 893.

DONWORTH, J.—This is an action to recover damages for personal injuries received when plaintiff was assaulted by an employee of defendants. The employee was named in the complaint as a party defendant but was never served with process, and, upon plaintiff's motion, the court at the beginning of the trial dismissed him from the action.

After the close of the testimony, the court took the case under advisement and later filed a memorandum decision in favor of plaintiff. Subsequently, the defendants' motions for judgment notwithstanding the decision or for a new trial were heard and denied. Findings of fact and conclusions of law were entered by the court, together with a judgment awarding damages to the plaintiff. Defendants have appealed from this judgment.

Appellants' three assignments of error state one and the same ground for reversal, namely, that the court should have dismissed the case as to each of them.

■ No error is assigned upon any of the trial court's findings of fact, so we are bound to accept them as the established facts upon which our decision must be predicated.

In *State v. Moore*, 34 Wn. (2d) 351, 208 P. (2d) 1207, we said:

"We have repeatedly held that where no error is assigned upon the findings of fact, this court will accept the findings as the established facts in the case. *LeCocq Motors v. Whatcom County*, 4 Wn. (2d) 601, 104 P. (2d) 475; *Hansen v. Lindell*, 14 Wn. (2d) 643, 129 P. (2d) 234; *Brydges v. Millionair Club*, 15 Wn. (2d) 714, 132 P. (2d) 188."

The facts as found by the trial court are these: Appellant Smith at all times material to this controversy was the owner of the Broadway Apartments in Spokane. Appellant Fancy was engaged in the property management business in that city and was employed by Smith to manage the Broadway Apartments. In the course of his management of Smith's property, Fancy employed one Trask to work as a janitor in the Broadway Apartments on a twenty-four-hour basis. (Trask, though subpoenaed as a witness by appellants, was not present at the trial.) He committed the assault on respondent which is involved in this action.

Respondent, Chauncey La Lone, was a tenant in the Broadway Apartments, renting a storeroom on the ground floor, in which he carried on a new and second-hand furniture business.

February 27, 1949, Trask assaulted one Atchley, also a tenant in the same apartment building. Regarding the retention of Trask in the employ of appellants after that episode and the circumstances surrounding Trask's assault on respondent April 15, 1949, the trial court found as follows:

"VI

"That James Trask at times during his employment by the defendants had exhibited to other tenants of the defendants traits of dissipation and irresponsibility and was addicted to periods of drunkenness while on the premises of the defendants, and while under the influence of intoxicants was of a quarrelsome nature and possessed a violent temper, and that said James Trask was thereby unsuited to the employment assigned to him by the said defendants. That on or about the 27th day of February, 1949, James Trask, while in an intoxicated condition, and upon the above described premises, physically assaulted and abused one Thomas W. Atchley, a tenant of the defendants and threatened to commit further bodily harm. That the tenant, Thomas W. Atchley, notified Jay W. Fancy, the agent, of the assault committed upon him by James Trask, such notification being by telephone communication, and that thereafter Thomas W. Atchley went to the office of the defendant agent and described the manner in which he had been assaulted and abused, and described the extent of his injuries, and that such notification in both instances was given directly to Jay W. Fancy, who thereafter went to the Broadway Apartments, interviewed Atchley, and at that time told Atchley he would fire Trask if Atchley said the word. That James Trask was not discharged at any time prior to April 16, 1949.

"VII

"That on the 15th day of April, 1949, James Trask, while employed by the defendants, was also entertaining an acquaintance, and he and said acquaintance had secured a case of beer and had consumed undetermined quantities, and Trask had consumed a quantity of such beer that he was under the influence of liquor during the afternoon of April 15, 1949. That while in such condition, he came upon the premises leased by the plaintiff and requested a loan

from plaintiff, which was refused. That said refusal angered and enraged James Trask, who thereafter left the premises and later on the same afternoon went upon the premises of one Randall, a shoe repair man, a tenant of the defendants, with space adjoining the space occupied by plaintiff. That at such time he was in an intoxicated condition, and stated that 'that fellow', (meaning plaintiff or his son-in-law), must remove his car, or he would 'show those S. O. B.s' (meaning plaintiff or plaintiff's son-in-law) 'that they couldn't use his alley.' That to implement his design, the said Trask sprinkled roofing tacks around a car and truck parked on the rear of the premises above described. That thereafter, between 4:00 and 5:00 P. M. April 15, 1949, the plaintiff went to his parked truck, which was ready to be driven away, for the purpose of giving instructions to his son-in-law for the delivery of a rug pad. That the truck was driven away, and thereafter Trask berated plaintiff in an angry manner and swung his arm and fist at plaintiff, who endeavored to escape, and James Trask knocked plaintiff down, jumped on top of him, beat him about the head and body, grabbed plaintiff's tie and attempted to choke him, all the while beating him, inflicting upon him the injuries and damage hereinafter described. . . .

## "X

"That the defendants Smith and wife as owners and principals, and the defendants Fancy and wife as agents, were each and both negligent in retaining in their employ the said James Trask, after actual notice had been given that said Trask was of a violent nature, that he was addicted to the use of intoxicants and would be a person likely to commit an assault upon others rightfully upon the defendants Smiths' premises, and that he had upon a previous occasion committed such an assault upon one actually a tenant thereof; and the Court further finds that the assault of James Trask upon the plaintiff as hereinbefore described was committed while in the employment of defendants and while on the premises of defendant Smith, and that the retention of said Trask in defendants' employ, after knowledge of the defendants that he would be liable to commit unlawful acts, was a proximate cause of the injuries and damage suffered by the plaintiff."

Appellants first argue that neither their employment of Trask nor his retention in their employ after February 27, 1949, was the proximate cause of the assault, because on

April 15, 1949, Trask turned aside from his duties as janitor to engage in a fight with respondent. They cite in support of this argument *Linden v. City Car Co.*, 239 Wis. 236. 300 N. W. 925, and *Creamer v. Kroger Grocery & Baking Co.*, 260 Ky. 544, 86 S. W. (2d) 288. In the first case referred to, the Wisconsin court held that the allegations of the complaint failed to show that the employment of the assaulting taxi driver was the proximate cause of the plaintiff's injury. Here, the trial court specifically found that appellants' retention of Trask was the proximate cause of respondent's injuries.

The Kentucky case, mentioned above, involved the question whether a nineteen-year-old employee, who accidentally shot a customer while on duty as a clerk in respondent's store, was acting within the scope of his employment at the time of the shooting. It was held that he was not so acting.

■■ In the instant case, the doctrine of *respondeat superior* is not involved, because the issue is whether appellants were negligent in their retention of Trask. The trial court found that they were, and that finding is accepted by us as an established fact.

Our decisions in *Matsuda v. Hammond*, 77 Wash. 120, 137 Pac. 328; *Estes v. Brewster Cigar Co.*, 156 Wash. 465, 287 Pac. 36; and *Miller v. Mohr*, 198 Wash. 619, 89 P. (2d) 807, while not directly in point, recognize the legal principle that the negligent employment or retention of an incompetent employee makes the employer liable for injuries inflicted upon a third party by such employee.

In commenting upon this rule, it is stated in 1 Restatement, 465, Agency, § 213, in part as follows:

"*d. Agent dangerous.* The principal may be negligent because he has reason to know that the servant or other agent, because of his qualities, is likely to harm others in view of the work or instrumentalities entrusted to him. If the dangerous quality of the agent causes harm, the principal may be liable under the rule that one initiating conduct having an undue tendency to cause harm is liable therefor.

"The dangerous quality in the agent may consist of his incompetence or unskillfulness due to his youth or his lack of experience considered with reference to the act to be performed. An agent, although competent otherwise, may be incompetent because of his reckless or vicious disposition, and if a principal, without exercising due care in selection, employs a vicious person to do an act which necessarily brings him in contact with others while in the performance of a duty, he is subject to liability for harm caused by the vicious propensity. The negligence may be in entrusting an agent with instrumentalities which, in connection with his known propensities and the qualities of the instrumentalities, constitute an undue risk to third persons. These propensities may be either viciousness, thoughtlessness, or playfulness.

"One who employs another to act for him is not liable under the rule stated in this Section merely because the one employed is incompetent, vicious, or careless. If liability results it is because, under the circumstances, the employer has not taken the care which a prudent man would take in selecting the person for the business in hand. What precautions must be taken depend upon the situation. One may normally assume that another who offers to perform simple work is competent. If, however, the work is likely to subject third persons to serious risk of great harm, there is a special duty of investigation.

"Liability results under the rule stated in this Section, not because of the relationship of the parties, but because the employer antecedently had reason to believe that an undue risk of harm would exist because of the employment. The employer is subject to liability only for such harm as is within the risk. If, therefore, the risk exists because of the quality of the employee, there is liability only to the extent that the harm is caused by the quality of the employee which the employer had reason to suppose would be likely to cause harm."

█ Appellants finally contend that respondent was guilty of contributory negligence in refusing to loan Trask money to purchase beer. In their brief, appellants state their position as follows:

"In the first place, he [respondent] admits that he and Trask, the janitor, had worked together approximately 50 times in the delivery of goods and that he had had some drinks with Trask, showing the intimacy between them.

He further admitted that he generally gave him money to compensate him for any labor Trask performed in assisting him, showing further financial transactions between them. La Lone might well have known that, having accommodated Trask fifty times in the matter of money advances, Trask would bitterly resent his refusal to do so on this occasion; and, by refusing to do so on this occasion, La Lone voluntarily contributed to the animosity which arose. While Trask was not in court to testify, the general conduct of the parties would indicate that he had paid Trask money before with which to purchase beer or other liquor."

The findings do not afford any factual basis for this contention, but, even if the findings had included in substance the statements quoted above, it does not seem to us to warrant a holding that respondent's acts amounted to contributory negligence, because respondent was under no duty to placate Trask by loaning him money and thereby avoid a possible assault, regardless of previous loans to him. We cannot hold that respondent was guilty of contributory negligence in this case.

■ To the facts of this case, as found by the trial court, we must apply the rule of law that an employer is liable to a third person for injuries inflicted upon him by an employee who has been retained in employment after the employer knows, or ought to know, that because of his vicious temperament or propensities he is likely to assault persons during the course of his employment. See 35 Am. Jur. 1006, Master and Servant, § 573.

The trial court found that appellants were negligent in the respect stated in the portion of the findings quoted above. The court further found that appellants' negligence was the proximate cause of respondent's injuries.

Under this state of the record, we are constrained to affirm the judgment of the trial court. It is so ordered.

SCHWELLENBACH, C. J., BEALS, HILL, and FINLEY, JJ., concur.