[No. 14898-6-II. Division Two. March 2, 1992.]

ROBERT GUILD, ET AL, *Appellants*, v. SAINT MARTIN'S COLLEGE, *Respondent*.

492

*Robert Guild,* pro se.

*Ernest L. Meyer* and *Meyer Law Office,* for respondent.

ALEXANDER, J. — Robert and Veachel Guild appeal a summary judgment of the Thurston County Superior Court dismissing their lawsuit against St. Martin's College for damages for wrongful discharge, fraud, negligent hiring and negligent supervision. We affirm.

In 1983, Robert Guild obtained employment at St. Martin's College as an assistant professor in the Business-Economics Division. Guild's contract of employment with the College was for a 1-year period.

The employment contract contained a provision that faculty members "shall be accorded the prerogatives and benefits described in the College's *Faculty Handbook* and agrees to perform his or her duties according to the regulations and procedures described in said *Faculty Handbook* as from time to time amended." The handbook contained a provision that employment contracts could be terminated at the yearly expiration date of a contract and that initial full-time appointments were "probationary" for the first 2 or 3 years.

Robert Guild's employment contract with St. Martin's was renewed for the academic years of 1984 and 1985. In October of 1985, however, the Dean of the Business-Economic Division, Teresa Perrien-Woods, advised the acting vice president for academic affairs that she was recommending that Professor Guild's contract for full-time employment not be renewed at the end of his third year of teaching. Perrien-Woods explained that due to the "configuration of this division's faculty for the upcoming year . . . Mr. Guild does not fit into any designated position."

Perrien-Woods' recommendation was eventually reviewed by the president of St. Martin's College, Dr. David Spangler, who then informed Guild by letter that his employment contract would not be renewed. Spangler gave the following reasons for nonrenewal of the contract:

1. It is imperative that the Business Division have a faculty member with knowledge and skill related to computer applications to business.
2. The Division recommended to the Vice President for Academic Affairs and to the President on February 6, 1986 that the major in Economics be discontinued.
3. The Business Division must develop and/or strengthen faculty in the areas most in demand, such as marketing, international business, and accounting.
4. Given our size, Saint Martin's must recruit faculty who fit the "mix" needs not only for one year, but for the future.

Pursuant to provisions in the faculty handbook, Professor Guild petitioned the College's Faculty Affairs Committee to review the nonrenewal of his employment contract. The committee met and determined that, according to its reading of provisions in the faculty handbook, a case for nonrenewal of the contract had not been established.[1] It recommended that the decision not to renew Guild's contract be reconsidered. Dr. Spangler reviewed the committee's recommendation, but confirmed his earlier determination. Guild's contract was not renewed.

In 1989, Professor Guild became aware that Perrien-Woods had made certain misrepresentations to St. Martin's College regarding her academic qualifications at the time she obtained employment at the College. Guild apparently believed that Perrien-Woods was unqualified to be an assistant professor and dean at St. Martin's and that this lack of qualifications affected the validity of the nonrenewal of his contract. He, therefore, approached officials of the College in what he described as an attempt "to negotiate a settlement". Guild's efforts, apparently, were to no avail.

The Guilds then brought suit against St. Martin's. Their complaint was amended several times but eventually it contained allegations that St. Martin's should pay them damages because of alleged wrongful discharge, fraud, negligent hiring and negligent supervision.

St. Martin's moved for summary judgment. The record considered by the trial court on summary judgment showed

---

[1]Apparently, the committee concluded that cause for termination or dismissal had to be established for nonrenewal of the contract.

that Teresa Perrien-Woods first became employed at St. Martin's in 1982, as an assistant professor. Perrien-Woods was later promoted to the position of Dean of the Business-Economics Division of the College. In 1988 officials at St. Martin's became aware that Perrien-Woods had misrepresented her academic qualifications when she initially obtained employment at the College.[2]

St. Martin's motion for summary judgment was granted. Guild made several motions to "re-open" and to "reconsider". These motions were denied.

■ Because there are no material factual disputes, this case was ripe for summary judgment. Our task is to determine if the trial court committed an error of law in dismissing Guild's lawsuit against St. Martin's. CR 56. In reviewing a summary judgment this court undertakes the same inquiry as the trial court. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). In doing that we will examine each of the contentions against St. Martin's.

## I
### WRONGFUL DISCHARGE

The Guilds apparently contend that Professor Guild's discharge was wrongful because Perrien-Woods did not have the degrees required for a dean of the College. They point to the provision in Guild's employment contract with St. Martin's, which provided that faculty members are to be "accorded the prerogatives and benefits" described in the faculty handbook. They also call our attention to a provision in the faculty handbook which provides that an assistant professor is one who is in possession of an "appropriate Master's degree or its professional equivalent". Because Perrien-Woods did not have a master's degree or its equivalent, they argue, she should not have been named an assistant professor and dean and, thus, the action of St. Martin's College in not renewing Professor Guild's contract based on her recommendation was wrongful.

---

[2]Perrien-Woods apparently falsely stated that she had earned degrees from both Ohio University and Pacific Lutheran University.

■ The precise nature of the Guilds' wrongful discharge theory is not totally clear to us. They assert, on the one hand, that St. Martin's committed a tort when it discharged Guild. Employees may sue in tort for wrongful discharge when an employer dismisses them for a reason that violates a clear mandate of public policy, either legislatively or judicially recognized. *Hibbert v. Centennial Villas, Inc.*, 56 Wn. App. 889, 893, 786 P.2d 309 (1990) (citing *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 685 P.2d 1081 (1984)). There is no suggestion here that Guild's contract was not renewed for a reason that violated public policy. Clearly, there is no tort liability.

The other wrongful discharge theory that the Guilds make reference to in their brief and in argument is breach of contract. They cite *Thompson v. St. Regis Paper Co., supra*, as support for this position. *Thompson* stands for the proposition that employees who are "terminable at will" may be terminated only for cause if they can establish that there is an implied contract between the employee and employer to that effect. Guild does not fall under *Thompson* because he is not a terminable-at-will employee. Guild had a 1-year contract with St. Martin's which could be renewed annually upon mutual agreement of the parties. They do not suggest, nor could they, that Professor Guild's contract had to be renewed by St. Martin's, absent cause for termination or dismissal. That being the case, the Guilds' only remaining theory is that the College somehow breached the employment contract when it did not renew it. The alleged breach, as noted above, was that a person involved in the process did not possess the required qualifications for her position.

■ Even if we were to assume that St. Martin's was contractually bound, through contract, to employ only an academically qualified person as dean, and that Perrien-Woods was not qualified for that position, the breach of that provision in the contract does not give rise to recovery for the Guilds. We reach that conclusion because Perrien-Woods'

lack of qualifications was not the cause of nonrenewal of the contract.

Perrien-Woods only had authority to make a recommendation to the vice president for academic affairs regarding the nonrenewal of Guild's contract.[3] The academic vice-president, armed with this recommendation, then made a recommendation to the College president. It was the president who had the final authority as to the renewal or non-renewal of employment contracts. It is clear to us that Guild was granted all the rights and prerogatives that he was entitled to under the handbook and any deficiency in Perrien-Woods' qualifications did not cause any harm to the Guilds. In short, there was simply no breach here that can be considered material to the nonrenewal of Guild's contract.

At argument before this court, Guild made a similar argument that the recommendation of nonrenewal was, according to the handbook, to be made by the "chairperson" of the division and not a "dean" and that this amounted to a breach of contract as well. Again, any failure of St. Martin's to have persons with the proper credentials make a recommendation was insignificant. These were recommendations only and, significantly, the final authority was exercised by the president of the College.

## II
### FRAUD

Guild also claims, without citing any authority that is on point, that St. Martin's should respond in damages on a fraud theory. Again, we disagree.

The essential elements of fraud are (1) representation of a distinct fact, (2) its materiality, (3) its falsity, (4) the speaker's

---

[3]Section 2.7.4.1 provides:

"In the Fall, each Department Chairperson shall determine the department staffing needs for the next year.

"Not later than November 30, each Department Chairperson shall recommend on the renewal/non-renewal of appointments of faculty in his/her department. These recommendations shall be made in writing to the Vice President for Academic Affairs."

knowledge of its falsity or ignorance of its truth, (5) its intent that it should be acted on by the person to whom it was made, (6) ignorance of its falsity on the part of the person to whom it is made, (7) the latter's reliance on the truth or representation, (8) his right to rely on it, and (9) his consequent damages.

*Pacific Northwest Life Ins. Co. v. Turnbull,* 51 Wn. App. 692, 701, 754 P.2d 1262, *review denied,* 111 Wn.2d 1014 (1988).

█ These elements have not been shown. There is no suggestion that the reasons given by Dean Perrien-Woods for recommending nonrenewal of Guild's contract were untrue or that she committed any other fraud that caused harm to Guild. Neither have the Guilds shown any reliance on Perrien-Woods' misstatements of fact. Perrien-Woods' fraudulent conduct, if any, was against St. Martin's. As we have noted above, such conduct by the College in hiring Perrien-Woods, if it be fraud, did not cause the nonrenewal of the contract, the College president having the final authority as to whether the contract should be renewed. We believe the trial court properly resolved the fraud issue when it said:

> [T]he fraud committed by the dean was perpetrated on the college . . . and while one may say that they are an indirect recipient of perhaps a fraudulent action, the facts are beyond dispute that Mr. Guild was not in any contractual privity with the dean. Further, the facts show, in this court's view, without any material issue or dispute, that when the plaintiff was hired into the college, he did not accept employment relying on the particular status of the dean in question or the dean's credentials.

### III
### NEGLIGENT HIRING AND NEGLIGENT SUPERVISION

██ To prevail in a suit for negligent hiring, Guild must prove that St. Martin's knew, or should have known, of the dean's unfitness. *Banks v. Nordstrom, Inc.,* 57 Wn. App. 251, 787 P.2d 953 (1990). There was no evidence presented by the Guilds at the summary judgment hearing from which a determination could be made that St. Martin's failed to exercise ordinary care in the hiring of Perrien-

Woods, just as there are no facts supporting an assertion that St. Martin's breached its duty to exercise ordinary care in supervising the dean. Even if the Guilds could establish that St. Martin's was negligent in its hiring or supervision of Perrien-Woods, they would still have to show that the College's negligence proximately caused damage to them. As we have already observed, it was not an act of Perrien-Woods that ultimately brought about the nonrenewal of Guild's employment contract.

Finally, Guild contends that the trial court erred in denying his fourth motion to amend the pleadings. That motion was filed after the summary judgment motion was heard. The trial court indicated, after reviewing the motion, that no new cause of action was alleged. We have reviewed the motion and reach the same conclusion. The trial court did not err in denying the motions.

Affirmed.

PETRICH, C.J., and SEINFELD, J., concur.

Reconsideration denied April 19, 1992.

Review denied at 119 Wn.2d 1016 (1992).