[No. 14564-6-III.    Division Three.    November 2, 1995.]

DORY NIECE, *Appellant*, v. ELMVIEW GROUP HOME, *Respondent.*

*David A. Thompson* and *J. Adams Moore, Jr.*, of *Moore, Thompson & Scott*; and *Theodore F. Spearman*, for appellant.

*Nancy K. McCoid* of *Merrick, Hofstedt & Lindsey*, for respondent.

*Bryan P. Harnetiaux, Debra L. Stephens*, and *Gary N. Bloom* on behalf of Washington State Trial Lawyers Association, amicus curiae.

*Mary M. Palmer* on behalf of Washington Defense Trial Lawyers, amicus curiae.

SCHULTHEIS, J. — Lori Niece, a physically and mentally disabled woman, was repeatedly raped while residing at Elmview Group Home. Some of her claims against Elmview were dismissed on summary judgment and she appeals, contending the trial court erred in finding (1) Elmview was not vicariously liable for the intentional torts of its employee; (2) there was no issue of material fact regarding Elmview's negligent supervision; and (3) Elmview's duty to protect Ms. Niece from foreseeable dangers was limited to its duty to supervise its employees. We reverse and remand.

In 1986, when Ms. Niece was twenty-two years old, her mother placed her at Elmview, a private facility licensed by the Washington State Department of Health and the Department of Social and Health Services. Ms. Niece has cerebral palsy and has great difficulty walking and communicating. She is also profoundly developmentally disabled, with a mental age ranging from the four- to six-year level. Elmview provides residential care and treatment for around twelve persons with varying degrees of developmental disability.

On September 19, 1990, Elmview hired Kleber Quevedo, a twenty-five-year-old single male, primarily to care for male residents from 3 P.M. until around 7 P.M. From 7 P.M. until 10 P.M., Mr. Quevedo was left on the premises alone to care for all the Elmview residents. His shift ended at 10 P.M., when an evening staff person arrived and stayed until morning.

During a medical exam on August 14, 1991, it was discovered that Ms. Niece was six months pregnant. She eventually accused Mr. Quevedo of raping her several times by force. Mr. Quevedo admitted to finding her naked in her room before the first assault and to being "overwhelmed." Ms. Niece's baby was born unexpectedly and was found dead in the toilet of her room. Blood tests on the baby, Ms. Niece and Mr. Quevedo established that he was probably the father. He pleaded guilty to two counts of indecent liberties with forcible compulsion and was sentenced to ten years.

Ms. Niece's mother, as her guardian, filed suit for personal injury damages against Mr. Quevedo and Elmview on March 16, 1993. In an amended complaint filed February 17, 1994, she added Ms. Niece's attending doctor as a defendant. The complaint included allegations that Elmview had negligently breached its duty (1) in hiring, training and supervising its employees, and (2) in caring for, supervising and treating Ms. Niece. On October 28, 1994, the trial court granted partial summary judgment and dismissed the rape-related claims against Elmview based on negligent hiring, training and supervision of Mr. Quevedo and Elmview's vicarious liability for Mr. Quevedo's assaults.

In a hearing on Ms. Niece's motion for clarification and reconsideration, she asked the court to rule on the duty to protect a resident from the foreseeable consequences of her handicaps, a duty described in *Shepard v. Mielke*, 75 Wn. App. 201, 877 P.2d 220 (1994). The trial judge told her he believed he addressed the *Shepard* duty to protect when he ruled on Elmview's negligent supervision of Mr. Quevedo. The final order ruled that all of Ms. Niece's theories of liability against Elmview relating to the rapes were dismissed.[1]

## A. Vicarious Liability

Ms. Niece first contends the trial court erred in summarily dismissing her claim that Elmview had a nondelegable duty to protect and care for its residents. She argues that Elmview assumed a contractual duty to provide safety for its residents in exchange for their surrender of control over themselves and their environment. This duty should extend, she asserts, to protection against intentional wrongful acts of employees outside the scope of their employment.

Summary judgments are upheld on review if the pleadings, affidavits, depositions and admissions on file show

---

[1]In review of this decision, we accepted amicus briefs submitted by the Washington State Trial Lawyers Association and the Washington Defense Trial Lawyers.

there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Ruff v. County of King*, 125 Wn.2d 697, 703, 887 P.2d 886 (1995). The reviewing court makes the same inquiry as the trial court, viewing the facts in the light most favorable to the nonmoving party. *Ruff*, 125 Wn.2d at 703. Although the extent to which an employee was acting within the scope of his or her employment is an issue of fact which may be considered under the principles of summary judgment, an employer may be relieved from liability for the conduct of its employees as a matter of law. *Bratton v. Calkins*, 73 Wn. App. 492, 497, 870 P.2d 981 (citing *Dickinson v. Edwards*, 105 Wn.2d 457, 466-67, 716 P.2d 814 (1986)), *review denied*, 124 Wn.2d 1029 (1994).

The doctrine of respondeat superior generally provides that an employer is liable for the acts of its employee committed within the scope of his or her employment. *Dickinson*, 105 Wn.2d at 466; *Bratton*, 73 Wn. App. at 498. When an employee's intentionally tortious or criminal acts are not in furtherance of the employer's business, the employer is not liable as a matter of law, even if the employment situation provided the opportunity or means for the employee's wrongful acts. *Bratton*, 73 Wn. App. at 498; *Kuehn v. White*, 24 Wn. App. 274, 278, 600 P.2d 679 (1979).

Ms. Niece does not argue that Mr. Quevedo was acting within the scope of his employment when he raped her; rather, she urges us to extend the common carrier exception to the respondeat superior doctrine to the relationship between a group home and its profoundly impaired residents.

A common carrier has the duty to exercise the highest degree of care toward its passengers. *Zorotovich v. Washington Toll Bridge Auth.*, 80 Wn.2d 106, 108, 491 P.2d 1295 (1971); *Pruneda v. Otis Elevator Co.*, 65 Wn. App. 481, 488, 828 P.2d 642 (1992). The common carrier and passenger relationship is considered a "special relationship" requiring an affirmative duty to render aid. *Lau-*

*ritzen v. Lauritzen*, 74 Wn. App. 432, 439-40, 874 P.2d 861 (pertaining to the special duty to protect certain classes of people from foreseeable criminal acts of third parties), *review denied*, 125 Wn.2d 1006 (1994). Under the common carrier exception to the respondeat superior doctrine, the employer is liable even for the intentional torts or criminal acts of its employees. *Rabon v. Guardsmark, Inc.*, 571 F.2d 1277, 1280-81 n.4 (4th Cir.), *cert. denied*, 439 U.S. 866 (1978); *Hutchins v. 1001 Fourth Ave. Assocs.*, 116 Wn.2d 217, 227-28, 802 P.2d 1360 (1991); *Marks v. Alaska S.S. Co.*, 71 Wash. 167, 169, 127 P. 1101 (1912); *Lauritzen*, 74 Wn. App. at 439-40.

Ms. Niece contends the special relationship between a group home and its profoundly disabled resident compels the extension of common carrier nondelegable liability for criminal acts of employees. A similar extension was adopted by the Indiana Supreme Court in *Stropes v. Heritage House Childrens Ctr., Inc.*, 547 N.E.2d 244 (Ind. 1989). In *Stropes*, a developmentally disabled child sued a children's center for damages arising out of his sexual assault by a nurse's aide. The court noted that the children's center assumed a contractual duty to protect its particularly vulnerable clients. This duty was found to be analogous to the duty of a common carrier, whose responsibility for the passenger's safety is predicated on the passenger's surrender of control over his or her environment. *Stropes*, 547 N.E.2d at 252-54. The court concluded that the children's center assumed a nondelegable duty to provide protection and care for its clients. Accordingly, the court reversed summary judgment dismissal of the nondelegable duty claim, and directed that the child must show at trial that the protection provided by the children's center fell short of the extraordinary standard of care imposed by the common carrier exception. *Stropes*, 547 N.E.2d at 254.

No Washington court has extended the common carrier/ special duty vicarious liability to group homes, nursing homes or child care centers. *See, e.g., Bratton*, 73 Wn. App.

at 502 and *Thompson v. Everett Clinic*, 71 Wn. App. 548, 860 P.2d 1054 (1993), *review denied*, 123 Wn.2d 1027 (1994), which restrict the respondeat superior analysis to whether or not the employee was acting within the scope of employment. As of this date, no other jurisdiction has adopted the *Stropes* theory. *See, e.g., Worcester Ins. Co. v. Fells Acres Day Sch., Inc.*, 408 Mass. 393, 558 N.E.2d 958, 968 (1990) (imposition of common carrier liability on group day cares would constitute a significant extension of Massachusetts law); *Maguire v. State*, 254 Mont. 178, 182, 835 P.2d 755, 759-60 (1992) (creation of nondelegable duty for day-care centers would constitute a significant extension of Montana law). *See also Rabon* (refusal to extend common carrier liability to private security agencies).

As Elmview points out, the *Bratton* court recently rejected the invitation to impose vicarious liability on a school district employer for the sexual misconduct of its teacher. The court noted that such an extension of vicarious liability would be far-reaching, negatively affecting one-on-one contacts between students and teachers, restricting extracurricular activities and making insurance for school districts harder to obtain. Any such "redirection of social policy," the court observed, is better left to the Washington Legislature. *Bratton*, 73 Wn. App. at 502. Here, as well, the imposition of vicarious liability through the common carrier exception could have serious consequences on the availability and affordability of group homes and the availability of insurance for those institutions.

■ Although Ms. Niece's profound vulnerability—as well as her surrender of control over her environment in exchange for Elmview's contractual duty to safeguard—argues strongly for the imposition of a special duty, the lack of common law support for a nondelegable duty under these circumstances precludes vicarious liability for Mr. Quevedo's sexual misconduct.

## B. Negligent Supervision

We are next asked to address the trial court's summary dismissal of Ms. Niece's negligent supervision claim. She

contends Elmview breached its duty to control the reasonably expectable dangerous tendencies of its employees.

■ "An employer is not liable for negligently supervising an employee whose conduct was outside the scope of the employment unless the employer knew, or in the exercise of reasonable care should have known, the employee presented a risk of danger to others." *Thompson*, 71 Wn. App. at 555 (citing *Peck v. Siau*, 65 Wn. App. 285, 294, 827 P.2d 1108, *review denied*, 120 Wn.2d 1005 (1992)); *Scott v. Blanchet High Sch.*, 50 Wn. App. 37, 44, 747 P.2d 1124 (1987), *review denied*, 110 Wn.2d 1016 (1988); RESTATEMENT (SECOND) OF TORTS § 317(b)(ii) (1965). As noted above, Ms. Niece concedes that Mr. Quevedo was acting outside the scope of his employment when he raped her. She argues, however, that Elmview should have known there was a need to control his behavior because he was in a class of individuals—single, sexually active males—which presented a risk of raping vulnerable females. She supports this argument with an affidavit by a former Elmview administrator who established a policy preventing male staff members from being alone with female residents. This policy came about in the mid-1980s when a staff member was accused of sexually molesting male and female residents; it was subsequently abandoned before Mr. Quevedo was hired. Ms. Niece argues that the former existence of this policy, and Elmview's knowledge that Mr. Quevedo was having a sexual relationship with a staff member before he raped Ms. Niece, put the group home on notice that it needed to control Mr. Quevedo's activities with the vulnerable female residents. We disagree.

■ Generally speaking, an employer will be held liable for negligently supervising an employee whose conduct was beyond the scope of employment only if the employer had prior knowledge of that particular employee's dangerous tendencies. *La Lone v. Smith*, 39 Wn.2d 167, 171, 234 P.2d 893 (1951); *Thompson*, 71 Wn. App. at 555; *Guild v. Saint Martin's College*, 64 Wn. App. 491, 498, 827 P.2d

286, *review denied*, 119 Wn.2d 1016 (1992); *John Does v. CompCare, Inc.*, 52 Wn. App. 688, 694, 763 P.2d 1237 (1988), *review denied*, 112 Wn.2d 1005 (1989). Ms. Niece's affidavits do not set forth specific facts indicating Elmview should have known of a particularly dangerous tendency in Mr. Quevedo, beyond his status as a single, sexually active male. Such "[b]road generalizations and vague conclusions are insufficient to resist a motion for summary judgment." *Thompson*, 71 Wn. App. at 555.

### C. Duty To Protect

Finally, Ms. Niece assigns error to the summary judgment dismissal of her claim for breach of a duty to protect. When asked in the motion for clarification if the court had ruled on Elmview's liability for failing to protect her from the foreseeable consequences of her handicaps, the court replied that Elmview's duty was limited to the issues of negligent hiring and supervision of Mr. Quevedo. We find that a cause of action for breach of a duty of care exists independent of the employee negligent supervision claim.

A negligence action has four elements: (1) a duty to the plaintiff; (2) breach of that duty; (3) resulting injury; and (4) proximate cause between the breach and the injury. *Hutchins*, 116 Wn.2d at 220. The existence of a duty is a question of law, while foreseeability and policy considerations determine the extent of that duty. *Hutchins*, 116 Wn. 2d at 220; *Shepard v. Mielke*, 75 Wn. App. at 205; *Youngblood v. Schireman*, 53 Wn. App. 95, 99, 765 P.2d 1312, 25 A.L.R.5th 807 (1988). Foreseeability is a question of fact unless the circumstances of the injury " 'are so highly extraordinary or improbable as to be wholly beyond the range of expectability.' " *Shepard*, 75 Wn. App. at 206 (quoting *McLeod v. Grant County Sch. Dist.*, 42 Wn.2d 316, 323, 255 P.2d 360 (1953)).

In *Shepard*, 75 Wn. App. at 205, we found that a nursing home's function is "to provide care for those who are unable because of physical or mental impairment to

provide care for themselves." Because of this relationship, the nursing home has a duty, by law, to safeguard the resident from the foreseeable consequences of his or her impairment. *Shepard*. This duty includes "taking reasonable precautions to protect those who are unable to protect themselves." *Shepard*, 75 Wn. App. at 205. Elmview urges us to find that the *Shepard* duty is limited to protection against assault by third parties, which by definition would not include employees. We reject this limitation of a nursing home's duty to safeguard its residents against reasonably foreseeable harms, and find that there is no reason to differentiate between foreseeable harms caused by potentially hazardous physical conditions (*McLeod*), visitors (*Shepard*) or staff.

The crucial relationship in this theory of liability is between the nursing home and its resident, not between the nursing home and its employee. As we noted in *Shepard*, a nursing home provides care and security to its residents for a fee. "Its knowledge of the condition of its residents creates a concomitant duty much like that of a hospital to safeguard residents against reasonably foreseeable risks of harm." *Shepard*, 75 Wn. App. at 206. Whether the actions of a staff member come within the scope of reasonably foreseeable harms depends on what is perceived as "the general field of danger covered by the defendant's specific duty." *Shepard*, 75 Wn. App. at 206 (citing *Hansen v. Friend*, 118 Wn.2d 476, 483-84, 824 P.2d 483 (1992)). The question is whether the "activities related to the criminal act could have been reasonably anticipated . . . ." *Blenheim v. Dawson & Hall, Ltd.*, 35 Wn. App. 435, 443, 667 P.2d 125, *review denied*, 100 Wn.2d 1025 (1983).

Staff members have greater access to nursing home residents than the general public. Whether or not a nursing home has advance notice of the dangerous proclivities of a staff member or a visitor, the nursing home has a duty to take certain precautions to protect the vulnerable residents entrusted to its care. Ms. Niece has presented evidence to show that Elmview abandoned a policy which

would have provided protection against staff abuse. She also submitted a deposition from a doctor who testified that it should have been standard procedure for male staff to be supervised while caring for female residents.[2] This evidence raises an issue of fact concerning whether Elmview breached its duty to protect Ms. Niece from the reasonably foreseeable consequences of her disabilities, a duty which extended to protection from assaults by all reasonably foreseeable third parties, including staff. On this basis alone, we reverse and remand for trial.

THOMPSON, C.J., and SWEENEY, J., concur.

Review granted at 129 Wn.2d 1005 (1996).

---

[2]The doctor mistakenly believed Mr. Quevedo had been responsible for bathing Ms. Niece. Actually, Mr. Quevedo testified at his trial that he found Ms. Niece naked immediately after her evening shower. The relevance of the doctor's opinion evidence may be questioned at trial, but it serves to raise a question of fact here. *Davidson v. Metropolitan Seattle*, 43 Wn. App. 569, 575, 719 P.2d 569 (opinion evidence is only pertinent if supported by material facts), *review denied*, 106 Wn.2d 1009 (1986).