[No. 23474-2-II.   Division Two.   December 3, 1999.]

BETTY Y., *as Guardian, Appellant,* v. SAMEEH AL-HELLOU, ET AL., *Defendants,* GIBSON AND WISE REAL ESTATE INVESTMENTS, INC., *Respondent.*

*Charles Henry Williams*, for appellant.

*Timothy R. Gosselin* and *Alexa Novak-Krajewski* of *Burgess, Fitzer, Leighton & Phillips, P.S.*, for respondent.

ARMSTRONG, J. — Fourteen year-old J.M.Y. was sexually assaulted by Al-Hellou at Al-Hellou's Tacoma apartment. At the time, Al-Hellou was employed as a manual laborer rehabilitating vacant apartments in Tumwater. J.M.Y. lived at an apartment on the same block as the one on which Al-Hellou was working at the time of the assault; J.M.Y. met Al-Hellou at the apartment building being rehabilitated. Gibson & Wise, Al-Hellou's employer, was aware that Al-Hellou had been convicted of child molesting in Texas. Betty Y., as guardian for J.M.Y., sued Gibson & Wise for negligently keeping Al-Hellou as an employee after they learned of his Texas conviction. Finding no proximate cause, the trial court granted summary judgment for Gib-

son & Wise. Holding that Gibson & Wise owed no duty to J.M.Y., we affirm.

## FACTUAL HISTORY

Sameeh Al-Hellou was hired by Gibson & Wise in the spring of 1993 as a manual laborer to rehabilitate vacant apartments. In November 1993, Al-Hellou was arrested pursuant to a fugitive warrant from Harris County, Texas. John Gibson, the owner of Gibson & Wise, learned of his arrest on charges of aggravated sexual assault of a child, and arranged for Al-Hellou's bail to be posted. Al-Hellou was released and returned to work.

In March 1994, Al-Hellou pleaded nolo contendre to the charge of first-degree aggravated sexual assault of a child. He received a suspended sentence with five years probation. Texas required Al-Hellou to participate in a sex-offender program but allowed him to return to Washington to live and work.[1]

Al-Hellou returned to Tacoma and his job with Gibson & Wise. In March 1995, J.M.Y. began living with his mother, Betty Y., at an apartment building on the same block as the Falls Pointe complex where Al-Hellou was working. J.M.Y. asked Al-Hellou for a cigarette and the two began talking. Over ten days, J.M.Y. swept up the apartment where Al-Hellou was working approximately five times; each time Al-Hellou paid him $20. On the last day J.M.Y. swept up, Al-Hellou asked J.M.Y. if he wanted to go to the mall. J.M.Y. agreed and the two met at the Falls Pointe apartment Al-Hellou was renovating. Al-Hellou then took J.M.Y. to his residence in Tacoma and raped him. Al-Hellou pleaded guilty to third-degree child rape.[2]

## ANALYSIS

■■ An employer may be liable for harm caused by an

---

[1]According to the conditions of his probation, Al-Hellou was to "[w]ork continuously at suitable employment." "Suitable employment" was not further defined.

[2]Al-Hellou was later transported to Texas where the previously suspended sentence was reimposed.

incompetent or unfit employee if (1) the employer knew, or in the exercise of ordinary care, should have known of the employee's unfitness before the occurrence; and (2) retaining the employee was a proximate cause of the plaintiff's injuries.[3] *Carlsen v. Wackenhut Corp.*, 73 Wn. App. 247, 252, 868 P.2d 882 (1994) (citing *Peck v. Siau*, 65 Wn. App. 285, 288, 827 P.2d 1108 (1992); *Guild v. Saint Martin's College*, 64 Wn. App. 491, 498-99, 827 P.2d 286 (1992)). But the employer's duty is limited to foreseeable victims and then only "to prevent the tasks, premises, or instrumentalities entrusted to an employee from endangering others." *Niece v. Elmview Group Home*, 131 Wn.2d 39, 48, 929 P.2d 420 (1997).

In *Carlsen*, we held that the employer of a part-time security guard at the Tacoma Dome could be liable for the guard's alleged assault of a young concertgoer. The question was whether the employer adequately investigated the guard's background before hiring him. Although duty was not discussed, the case illustrates the kind of situation where the employer owes a duty. The assault occurred on the work premises; the guard was on the job when he contacted the victim; and the victim approached the guard for information because of his position. In short, the guard's job enabled and was closely connected to the assault. *Carlsen*, 73 Wn. App. at 256.

In *Peck*, a student sued the school district for negligently retaining a teacher who made an inappropriate sexual approach to the student. We held that there was insufficient evidence that the school district knew or should have known that the teacher was unfit for the position. Again, although duty was not an issue, the case illustrates facts that can give rise to a duty. The teacher was hired specifically to work with young people, and the contact with the victim not only occurred on the work premises but was made possible because both the employee and the victim

---

[3]*Carlsen* addressed negligent hiring, but for purposes of this case, the elements of negligent hiring and negligent retention are identical.

were required to be on the work premises. *Peck*, 65 Wn. App. at 287.

Here, Al-Hellou was not hired to work with potential victims, the rape did not occur on the work premises, and, most importantly, the job duties did not facilitate or enable Al-Hellou to commit the rape. Thus, the tasks, premises, and instrumentalities entrusted to Al-Hellou were not what endangered the victim.

But J.M.Y. argues that Al-Hellou used the workplace to "groom" him with friendly talk, giving him cigarettes, paying him for sweeping up, and praising him. We disagree. First, there is no evidence that Gibson & Wise knew of Al-Hellou's grooming. Second, nothing about the job premises made it more likely that Al-Hellou would be put in contact with potential victims. This is unlike *Carlsen*, where the victim approached the guard *because* he was a guard, and unlike *Peck*, where the job duties and premises made the contact inevitable. Here, the fact that the contact occurred on the work premises was fortuitous. It could have just as easily occurred on the street, in a playground, or any other public place in the area. And the Supreme Court, in a slightly different context, has said "[w]e do not suggest that a principal is an insurer against all harm occasioned by its agents simply because the work situation fortuitously provides an opportunity to perpetrate the harm." *C.J.C. v. Corporation of the Catholic Bishop*, 138 Wn.2d 699, 727, 985 P.2d 262 (1999).

Betty Y. argues that the trial court's decision conflicts with a paramount state interest in protecting children from sexual abuse. Betty Y. contends that by statute, Washington seeks to protect children from sexual abuse.[4] Although the Supreme Court considered such a policy argument in support of its decision in *C.J.C.*, it did so only in support of its legal analysis imposing the duty, not as the sole basis for establishing the duty. *C.J.C.*, 138 Wn.2d at 726. We are

---

[4]Betty Y. cites over 38 statutes ranging from reporting sexual abuse to sex offender registration and community notification and occupational licensing disqualifications.

unwilling to expand the parameters of the limited duty owed by an employer in these circumstances solely on the basis of "policy."

■ Finally, Betty Y. argues that Gibson & Wise was negligent because it employed a person whom it knew to be a defective or dangerous instrumentality, citing RESTATE-MENT (SECOND) OF TORTS, § 307,[5] and *La Lone v. Smith*, 39 Wn.2d 167, 234 P.2d 893 (1951). This argument was not raised in the trial court. And this court need not consider an issue, theory, or argument not presented at trial. *Herberg v. Swartz*, 89 Wn.2d 916, 925, 578 P.2d 17 (1978) (citation omitted).

But even if we consider the issue, Betty Y. cannot prevail. A child sex offender performing manual labor in vacant apartments is not "so incompetent, inappropriate, or defective, that its use involves an unreasonable risk of harm to others."[6] Betty Y. relies on the first illustration under comment a of section 307.[7] But unlike the illustration, here the assault did not occur on the employer's property and, as we have discussed, the contact between Al-Hellou and the victim was fortuitous. Betty Y. also cites *La Lone*, where the employee, a janitor in an apartment complex, had previously assaulted a tenant. The employer retained him, and the employee assaulted yet another tenant, resulting in the lawsuit. *La Lone*, 39 Wn.2d at 169. But in *La Lone*, the court relied on the RESTATEMENT (FIRST) OF AGENCY § 213,

---

[5]RESTATEMENT (SECOND) OF TORTS § 307 (1965), *Use of Incompetent or Defective Instrumentalities*: "It is negligence to use an instrumentality, whether a human being or a thing, which the actor knows or should know to be so incompetent, inappropriate, or defective, that its use involves an unreasonable risk of harm to others."

[6]*See supra* note 5.

[7]The first illustration is:

A, the proprietor of an apartment house, employs as janitor B, a man whom A knows to be of an exceedingly fiery and violent temper. C, one of A's tenants, complains to B in regard to lack of heat. B becomes violently angry and attacks and harms C. Irrespective of whether B's act is within the course of his employment as janitor, A is negligent toward C.

RESTATEMENT, *supra* cmt. a, illus. 1 (1965).

which states that a principal may be liable for the harm caused by an agent if the principal employs " 'a vicious person to do an act which necessarily brings him in contact with others.' " *La Lone*, 39 Wn.2d at 172. Contact with others is precisely what is missing here. Al-Hellou's job was rehabilitating *vacant* apartments. Although the job may have put Al-Hellou in some incidental contact with tenants, it did not necessarily bring him in contact with tenants or children.

## CONCLUSION

We hold that Gibson & Wise did not owe a duty to J.M.Y. to prevent the rape committed by Al-Hellou. As the trial court opined, "to hold Gibson & Wise liable under the facts of this case would make every employer an insurer of the safety of any person who may have had initial contact with the employee on the premises of the employer."

Affirmed.

BRIDGEWATER, C.J., and HOUGHTON, J., concur.

Review denied at 140 Wn.2d 1022 (2000).