IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| BELEN CASTRO, a single person, | ) | |
| | ) | No. 32148-7-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| VIRGIL BUSHMAN and LISA | ) | |
| BUSHMAN, husband and wife; | ) | |
| TOPPENISH KINGDOM HALL, an | ) | UNPUBLISHED OPINION |
| affiliate of the Watchtower Bible and | ) | |
| Tract Society of New York, Inc. and the | ) | |
| Watchtower Bible and Tract Society of | ) | |
| Pennsylvania, Inc.; WATCHTOWER | ) | |
| BIBLE AND TRACT SOCIETY OF | ) | |
| NEW YORK, INC., and | ) | |
| WATCHTOWER BIBLE AND TRACT | ) | |
| SOCIETY OF PENNSYLVANIA, INC.; | ) | |
| JOHN DOES NOS. 1-10, | | |

Respondents.

SIDDOWAY, C.J. — Belen Castro appeals the summary judgment dismissal of her claims that the Toppenish Kingdom Hall, Watchtower Bible and Tract Society of New York, Inc., and Watchtower Bible and Tract Society of Pennsylvania, Inc. (hereafter collectively the "church defendants") failed to protect her from sexual abuse by a fellow member of the Toppenish congregation of Jehovah's Witnesses. Because Ms. Castro failed to demonstrate genuinely disputed material facts in response to the church

defendants' evidence that they were unaware of the abuser's propensities and owed no duty to protect her, summary judgment was proper. We affirm.

FACTS AND PROCEDURAL BACKGROUND

Because Belen Castro's complaint was dismissed on summary judgment, we review the evidence in the light most favorable to her.

Ms. Castro, now in her twenties, claims she was sexually abused by Virgil Bushman when she was eleven and twelve years old. Ms. Castro's contact with Mr. Bushman arose because she, her mother, and Mr. Bushman all attended the Toppenish Congregation of Jehovah's Witnesses. Mr. Bushman and his wife had become close friends with Ms. Castro's family and they would often do things together outside of church.

According to Ms. Castro, Mr. Bushman began making suggestive remarks to her when she was 11 years old, including that he wanted to have sex with her and "encouraging her to think about him in a sexual manner." Clerk's Papers (CP) at 7. He made these comments when nobody else was around, and Ms. Castro did not tell anyone about them.

Mr. Bushman's attentions became physical in May 2003, when Ms. Castro was 12 years old. She claims that Mr. Bushman first kissed and intimately held her during a Memorial Day weekend camping outing with several families in the Toppenish Congregation. Mr. Bushman next had sexual contact with her at his parents' home,

2

where he had invited her, her brother, and several other children to go swimming. According to Ms. Castro, Mr. Bushman touched her vagina with his fingers while they were all in the hot tub, and later kissed her in his parents' kitchen. Finally, she alleges that Mr. Bushman had unwanted sexual contact with her during a sleepover party at his home on June 21, 2003, while his wife was out of town.

In addition to this abuse alleged in a complaint that Ms. Castro filed in January 2012, Ms. Castro testified in deposition that there were several times where Mr. Bushman would touch her or "try to talk me into something" during church related events, including at the Toppenish Kingdom Hall. CP at 140. By way of example, she testified he would come behind her and "grab [her] butt" behind the large sound box in the back corner of the room. CP at 30. Although there were always people in the room, Ms. Castro maintains that Mr. Bushman would touch her in a way that nobody would see.

A few weeks after the June 21 sleepover at Mr. Bushman's house, Ms. Castro confided in her cousin about the abuse. A member of the congregation learned about the disclosure and notified church elders. Elders are the teachers of the congregation, and are assigned to "shepherd and protect the flock." CP at 198.[1] The elders asked Ms. Castro's

---

[1] Congregations of Jehovah's Witnesses have three appointed positions: elders, ministerial servants, and pioneers. To be eligible to be appointed as an elder, an individual must serve as a ministerial servant for a period of time. Ministerial servants lead in the field of ministry and assist the elders, who can assign them to various tasks. While they may play a role in the service meeting, a ministerial servant possesses less qualifications than an elder, and therefore is assigned only to "lighter teaching parts." CP

3

mother to come in with her daughter to discuss the allegations. A meeting between Ms. Castro, her mother, and two elders took place on July 4, 2003. Ms. Castro revealed at least some of Mr. Bushman's actions to the elders. Mr. Bushman never again molested Ms. Castro following that meeting.

Ms. Castro brought the action below against the Bushmans, the Toppenish Congregation, the Watchtower Bible and Tract Society of New York, Inc., and the Watch Tower Bible and Tract Society of Pennsylvania. The two Watchtower entities are religious organizations whose corporate members (the number has ranged from 30 to 300) have historically been elders living and serving at the United States branch offices of Jehovah's Witnesses in New York. Ms. Castro's complaint accused the congregation and the two Watchtower entities of failing to "take timely action" and to "properly polic[e] its membership." CP at 8.

Following discovery, the church defendants moved for summary judgment,[2] presenting evidence that Mr. Bushman held no position with the Toppenish Congregation or Watchtower entities, and that no official or employee of the church defendants had

---

at 197. A regular pioneer is someone who has agreed to serve in "full-time ministry" in their local congregation. *Id.* To become a regular pioneer, an individual must submit an application, which is considered locally and by the church's world headquarters in New York before approval.

[2] Ms. Castro settled her claims against the Bushmans.

notice of his propensities or his conduct toward Ms. Castro until after she confided in her cousin.

The trial court granted the church defendants' motion for summary judgment on the basis, in part, that they had no special relationship with either Mr. Bushman or Ms. Castro that would give rise to a duty to protect her from his conduct. Ms. Castro appeals.

## ANALYSIS

Ms. Castro implicitly recognizes that the church defendants cannot be liable for all of the injury alleged by her complaint, because she makes only one assignment of error on appeal: she contends that the trial court erred in granting summary judgment "when there were contested questions of material fact whether or not the plaintiff was molested on the defendants' premises." Br. of Appellant at 1. She focuses on her allegations that Mr. Bushman touched her sexually in Kingdom Hall, during church meetings, where, she argues, "security was so lax that even with the Watchtower officials in the very same room, Virgil Bushman would come up to Belen Castro, grab her buttocks, and fondle her." *Id.* at 2.

### Standard of review and burden on summary judgment

In reviewing an order for summary judgment, this court engages in the same inquiry as the trial court. *Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998). Summary judgment is properly granted when there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR

5

56(c). "[T]he court must consider the material evidence and all reasonable inferences therefrom most favorably for the nonmoving party." *Jacobsen v. State*, 89 Wn.2d 104, 108, 569 P.2d 1152 (1977).

A moving defendant may meet its initial burden of demonstrating no genuine issue of material fact by pointing out that there is an absence of evidence to support the plaintiff's case. If a moving defendant makes this initial showing, then the inquiry shifts to the party with the burden of proof at trial, the plaintiff. *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 225 & n. 1, 770 P.2d 182 (1989). The plaintiff must then set forth specific facts demonstrating a genuine issue for trial. *Id.* at 225. Mere allegations or conclusory statements of facts, unsupported by evidence, do not establish such a genuine issue. *Baldwin v. Sisters of Providence in Wash., Inc.*, 112 Wn.2d 127, 132, 769 P.2d 298 (1989). The nonmoving party "may not rely on speculation, argumentative assertions that unresolved factual issues remain, or in having its affidavits considered at face value." *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986).

*Duty*

The threshold question in any negligence action is whether the defendant owed a duty of care to the injured plaintiff. *Schooley v. Pinch's Deli Mkt., Inc.*, 134 Wn.2d 468, 474, 951 P.2d 749 (1998). Generally, a person has no duty to prevent a third party from causing physical injury to another. *Petersen v. State*, 100 Wn.2d 421, 426, 671 P.2d 230 (1983). Exceptions to this rule apply "where a special relationship exists between the

defendant and either the third party or the foreseeable victim of the third party's conduct." *Id.* at 426. The *Restatement (Second) of Torts* identifies the exceptions to the general absence of duty as existing where

> (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
> (b) a special relation exists between the actor and the other which gives to the other a right to protection

RESTATEMENT (SECOND) OF TORTS § 315 (1965).

The knowledge a defendant must have of the risk of harm differs depending on whether its special relationship is with the third party who causes injury, whom the defendant has a duty to control, or is with a victim, whom the defendant has a duty to protect. A duty arising from a special relationship with the third party causing harm requires proof "that the defendant was aware of the tortfeasor's dangerous propensities." *N.K. v. Corp. of Presiding Bishop*, 175 Wn. App. 517, 535, 348 P.3d 1237 (2015). Where the defendant's special relationship is with a victim, "a duty predicated on a protective relationship requires knowledge only of the 'general field of danger' within which the harm occurred." *Id.* at 526 (quoting *McLeod v. Grant County Sch. Dist. No. 128*, 42 Wn.2d 316, 321, 255 P.2d 360 (1953)).

In moving for summary judgment, the church defendants met their initial summary judgment burden of presenting evidence that they had no special relationship with Mr. Bushman giving rise to a duty to control his conduct, were unaware at material times that

7

he had any dangerous propensity, and had no special relationship with Ms. Castro giving rise to a duty to protect her. The burden then shifted to Ms. Castro to present evidence raising a genuine issue of fact as to those matters.

Ms. Castro's briefing on appeal does not focus our attention on which special relationship she claims existed on the part of the church defendants. Instead, she cites generally to *C.J.C. v. Corp. of Catholic Bishop of Yakima*, 138 Wn.2d 699, 722, 985 P.2d 262 (1999), an appeal of consolidated cases that presented and discussed both special relationships. We therefore address the sufficiency of her summary judgment showing on the three matters identified.

*The church defendants' relationship with Mr. Bushman*

The church defendants presented evidence in support of their motion for summary judgment that Mr. Bushman never held any appointed position in the Toppenish Congregation and was never an officer, director, member, or employee of either of the Watchtower organizations. Ms. Castro's complaint alleged only that Mr. Bushman was a member of the Toppenish Congregation. She provides no authority or argument that the church defendants had the right or ability to control Mr. Bushman's conduct based upon his membership alone.

The relations between a defendant and a third person causing harm that can give rise to a duty to control the third person's conduct are set forth in §§ 316-319 of the *Restatement*, § 315 cmt. c. They are the relationships between a parent and a minor child,

8

a master and a servant acting outside the scope of employment, a possessor of property and a licensee, and a person who has taken charge of a third party he knows or should know has dangerous propensities. Ms. Castro does not argue that any of these relationships existed between the church defendants and Mr. Bushman.

In each case Ms. Castro cites that involves duty arising out of a special relationship with the third person causing harm, the third person was employed by the defendant in some capacity. *See C.J.C.*, 138 Wn.2d at 720 (abuser was made a deacon and "entrusted with various leadership positions" within the church); *La Lone v. Smith*, 39 Wn.2d 167, 168, 234 P.2d 893 (1951) (landlord and apartment manager were liable where tenant was assaulted by a janitor whom they had employed); *Scott v. Blanchet High Sch.*, 50 Wn. App. 37, 43, 747 P.2d 1124 (1987) (school was not liable for sexual relationship between student and teacher in its employ because, even "assuming the doctrine of negligent hiring applies to schools," its hiring process "appears sufficient as a matter of law to discover whether an individual is fit to teach").

Ms. Castro fails to demonstrate any genuinely disputed issue of a special relationship between the church defendants and Mr. Bushman that requires trial.

*Lack of notice of dangerous propensities*

The church defendants also presented evidence in support of their motion for summary judgment that they had no notice of any dangerous propensity on Mr. Bushman's part until after the abuse stopped. The existence of a duty to control the

9

conduct of a third person with whom a defendant has a special relationship depends on proof that the defendant was aware of the tortfeasor's dangerous propensities. *N.K.*, 175 Wn. App. at 535.

Rather than demonstrate a dispute of fact, Ms. Castro's evidence actually supports the church defendants' evidence on this score. According to Ms. Castro, no one ever witnessed the abuse because Mr. Bushman "never did it when anyone was around." CP at 41. Although there were other people in the room, including church elders, she explained that Mr. Bushman would always touch her in a way that nobody could see it.

There is no disputed issue of notice of dangerous propensities; on this additional basis, it was proper to grant summary judgment dismissing any claim based on a special relationship between the church defendants and Mr. Bushman.

*The church defendants' relationship with Ms. Castro*

Turning to the duty that can arise out of a special relationship with a victim, "The duty to protect another person from the intentional or criminal actions of third parties arises where one party is entrusted with the wellbeing of another." *N.K.*, 175 Wn. App. at 532 (quoting *Niece v. Elmview Group Home*, 131 Wn.2d 39, 50, 929 P.2d 420 (1997)).

For example, Washington law recognizes a special relationship between a hospital or group home and its patients. *See, e.g., Hunt v. King County*, 4 Wn. App. 14, 20, 481 P.2d 593 (1971); *Niece*, 131 Wn.2d at 44 (special relationship between group home and its vulnerable residents gives rise to duty of reasonable care to protect residents from

10

foreseeable harm). Similarly, jailors owe a special duty of care to their inmates. *Gregoire v. City of Oak Harbor*, 170 Wn.2d 628, 639-31, 244 P.3d 924 (2010) (jailor has special relationship with inmates which includes protecting inmate against self-destructive acts); *see also Bishop v. Miche*, 137 Wn.2d 518, 973 P.2d 465 (1999) (county probation officer owed duty to exercise reasonable care to control parolee to prevent foreseeable harm to other resulting from parolee's dangerous propensities).

It is also well settled that a school district has a special relationship with students as a result of its role as a substitute parent. *Christensen v. Royal Sch. Dist. No. 160*, 156 Wn.2d 62, 70, 124 P.3d 283 (2005). Because a child is compelled to attend school, "the protective custody of teachers is mandatorily substituted for that of the parent." *McLeod*, 42 Wn.2d at 319; *Niece*, 131 Wn.2d at 44 ("The rationale for such a duty [is] the placement of the student in the care of the defendant with the resulting loss of the student's ability to protect himself or herself."); RESTATEMENT, *supra*, § 320 cmt. b ("[A] child while in school is deprived of the protection of his parents or guardian. Therefore, the actor who takes custody of . . . a child is properly required to give him the protection which the custody or the manner in which it is taken has deprived him.").

In *C.J.C.*, the court held that the relationship between a church and children within its custody analogous to that between a school and its pupils, noting that

> [t]he children of a congregation may be delivered into the custody and care
> of a church and its workers, whether it be on the premises for services and
> Sunday school, or off the premises at church sponsored activities or youth

11

> camps. As in other agency relationships, a church chooses its officials, directs their activities, and may restrict and control their conduct.

138 Wn.2d at 722. It therefore held that the duties owed by a church to protect the

children within its "custody and care" are similar to those owed by a school to its

students. *Id.*; *cf. S.H.C. v. Lu*, 113 Wn. App. 511, 525-26, 54 P.3d 174 (2002 (no special

relationship exists between an *adult* victim of sexual abuse and a religious organization

associated with the alleged abuser).

Even viewing the facts in the light most favorable to Ms. Castro, she has not

shown that she was within the custody of any of the church defendants at the time of the

alleged abuse.

We begin with the Watchtower defendants, who demonstrated that they have had

no input into the activities of congregations since March of 2001. Ms. Castro presented

no countervailing evidence. "Without a custodial relationship, typically involving on-

the-ground control of day-to-day operations, an institutional defendant is not in a position

to provide protection from physical danger as a school or church group does for

children." *N.K*, 175 Wn. App. at 535.

Nor has Ms. Castro shown that she was delivered into the "custody and care" of

the Toppenish Congregation when she attended meetings at Kingdom Hall. The

Toppenish Congregation demonstrated that it does not have a separate program for

children and does not segregate children from their parents during church sponsored

activities. It does not operate nursery schools, day-care centers, or summer camps. Rather than being "deprived of the protection of [a] parent[] or guardian" as occurs when a child is delivered into the custody and care of another, *Restatement*, §320 cmt. b, Ms. Castro admitted in deposition that she always attended church events at the Kingdom Hall with her mother.

It is not enough for Ms. Castro to argue, as she does in her assignment of error, that there is a dispute "whether . . . plaintiff was molested on the defendants' premises." The exception to the rule of nonliability for defendants having a special relationship with a victim is not a type of premises liability, it arises from the entrustment that gives rise to a duty of protection. Because there was no disputed issue of Ms. Castro's having been in the "custody or care" of the church defendants, there is no disputed issue of a special relationship between those defendants and Ms. Castro that requires trial.

The summary judgment dismissal of Ms. Castro's complaint is affirmed.

A majority of the panel has determined this opinion will not be printed in the

No. 321487-III
*Belen Castro v. Virgil Bushman, et ux, et al*

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Siddoway, C.J.

WE CONCUR:

_____
Brown, J.

_____
Lawrence-Berrey, J.

14