# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| LISA EARL, on behalf of and THE ESTATE OF JACQUELINE SALYERS, | No. 59220-7-II |
| Respondent, | |
| v. | |
| SCOTT CAMPBELL; the marital community of Scott and Jane Doe Campbell; AARON JOSEPH a/k/a AARON KOMOMUA; and the marital community of Aaron Joseph/Komomua and Jane Doe Joseph/Komomua; and CITY OF TACOMA, | PUBLISHED OPINION |
| Petitioners. | |

CRUSER, C.J.—Officer Scott Campbell fatally shot Jacqueline Salyers in 2016. Lisa Earl, Salyers' mother, sued Campbell and the City of Tacoma in United States District Court in 2017, alleging negligence, excessive force, and substantive due process claims. The district court granted summary judgment for the City, dismissing Earl's claims. Following the Washington State Supreme Court's decision in *Beltran-Serrano v. City of Tacoma*, 193 Wn.2d 537, 442 P.3d 608 (2019), the district court vacated summary judgment on the state law negligence claims. In 2021, Earl filed negligence claims against the City and Campbell in Pierce County Superior Court. In 2023, after receiving a report from a police practices expert, Earl moved to amend her complaint to add a negligence claim against Officer Aaron Joseph, Campbell's partner, and a claim against

the City for negligent retention of Joseph. The superior court granted Earl's motion to amend the complaint. Petitioners sought discretionary review. We granted discretionary review in 2023.[1]

Petitioners argue that Earl's negligent retention claim is not viable because Earl alleged, and the City conceded, that Joseph was acting within the scope of his employment during the incident in question, and thus agreed that in the event the jury concludes that Joseph acted negligently in his use of force, the City is vicariously liable for Joseph's negligence. The City asserts that where the employer agrees that it is vicariously liable for an employee's negligence, a negligent retention claim cannot be simultaneously asserted. In answering the certified question, we hold that where an employer concedes that its employee was acting within the scope of their employment during the allegedly negligent act, and that it is vicariously liable for the employee's negligence, a simultaneous negligent retention claim is superfluous and cannot be brought.

FACTS

I. BACKGROUND

In January 2016, Tacoma police officers Scott Campbell and Aaron Joseph received a tip regarding the location of Kenneth Wright, who had numerous outstanding warrants for his arrest. The informant provided a description of the vehicle Wright was seen in. The officers located a vehicle that matched the informant's tip, and found Wright sitting in the passenger's seat. Jacqueline Salyers, Wright's girlfriend, was sitting in the driver's seat.

---

[1] In an order modifying the commissioner's grant of review, we limited review solely to the issue certified by the trial court under RAP 2.3(b)(4), and declined review of whether the trial court erred in granting the motion to amend the complaint to add Joseph as a defendant. Ruling Granting Discretionary Rev., *Earl v. Campbell*, No. 59220-7-II (Wash. Ct. App. April 1, 2024).

According to Joseph's declaration, upon locating the suspect vehicle, he parked the patrol car in front of Wright's vehicle, exited, and approached Wright's vehicle with his weapon drawn while commanding Wright and Salyers to show their hands. Campbell also exited the patrol car and approached Wright's vehicle. According to Campbell's declaration, as he observed Wright, Wright appeared to lean over and reach under his seat. Focused on Wright, Campbell drew his weapon and approached the passenger side of the vehicle.

As the officers approached, Salyers began inching the vehicle forward. Joseph struck Salyers' window with his weapon in an effort to break the window, and as he did, Salyers accelerated. Joseph stated, "[w]ithin a few seconds of the car accelerating, I heard gunshots and saw the muzzle flash from the gun." Clerk's Papers (CP) at 122. Campbell explained that Salyers accelerated the car in his direction, causing him to jump backwards and rapidly move away from the car. At that point, he "fired a volley of shots at the driver," ultimately hitting Salyers with four bullets and killing her. *Id.*

## II. PROCEDURAL HISTORY

A. 2017 Complaint

In April 2017, Earl (Salyers' mother, the personal representative of Salyers' estate, and the legal guardian of two of Salyers' four minor children) filed a federal lawsuit in the United States District Court for the Western District of Washington. Earl asserted an excessive force claim, substantive due process claims, and wrongful death claims.[2]

---

[2] *Earl v. Campbell*, No. C17-5315BHS, 2019 WL 1403262, at *1 (W.D. Wash. Mar. 28, 2019) (court order), *vacated in part*, 2020 WL 777205 (W.D. Wash. Feb. 18, 2020) (court order), *aff'd*, 859 F. App'x 73 (9th Cir. 2021).

In March 2019, the federal court granted the City's motion for summary judgment. *Earl*, 2019 WL 1403262, at *4, 9. The court concluded that "Campbell is entitled to qualified immunity on the Estate's excessive force claim, Plaintiffs fail to submit sufficient evidence to establish any substantive due process claim, and Plaintiffs have failed to establish their negligence claims as asserted in the complaint." *Id*. at 4.

Earl filed a motion for reconsideration in July 2019, following our supreme court's decision in *Beltran-Serrano*.[3] The court granted Earl's motion in February 2020, vacating the previous order in regard to Earl's state law claims.[4] The court reasoned that "reconsideration is warranted because *Beltran-Serrano* constitutes a significant change in the law and undermines the Court's analysis of their state law claims." *Earl*, 2020 WL 777205, at *3. The court declined to exercise supplemental jurisdiction over the state law negligence claims, dismissed the 42 U.S.C. § 1983 claim with prejudice, and dismissed the state law claims without prejudice. *Id*. Earl appealed the district court's grant of summary judgment regarding the federal claims to the Ninth Circuit. *Earl v. Campbell*, 859 F. App'x 73 (9th Cir. 2021). In June 2021, the Ninth Circuit affirmed the district court's grant of summary judgment regarding the claims of excessive force, substantive due process, and denial of access *Id*. at 73-74, 76.

B. 2021 Complaint

In August 2021, following the federal district court's order vacating the grant of summary judgment as to Earl's state law claims, Earl filed state law negligence claims in Pierce County

---

[3] *Beltran-Serrano* holds that the fact that an officer's conduct may constitute an intentional tort does not preclude a negligence claim. *Beltran-Serrano*, 193 Wn.2d at 540.

[4] *Earl v. Campbell*, No. C17-5315BHS, 2020 WL 777205, at *5 (W.D. Wash. Feb. 18, 2020) (court order), *aff'd*, 859 F. App'x 73 (9th Cir. 2021).

Superior Court. Again, Earl alleged that Campbell acted negligently in shooting and killing Salyers, and his negligence caused the wrongful death of Salyers. The complaint alleged that the City was liable for the negligent conduct of Campbell.

*1. 2023 Amended Complaint*

In May 2023, Earl moved to amend her complaint, seeking to add a negligence claim against Joseph, a vicarious liability claim against the City based on Joseph's negligence, and a negligent retention claim against the City for retaining Joseph.

Earl retained a police practices expert, and argued that new evidence brought to light by the expert's report contradicted Joseph's assertion that he did not fire his gun on the night of Salyer's death, which bore upon Joseph's veracity.[5] Earl also discovered that Joseph was investigated for domestic violence in 2009. Earl argued that "[h]ad he been fired, as he should have per policy, Joseph would not have committed negligent acts, such as his own admitted act of smashing his police pistol against her window, giving rise to Jackie Salyers' death." CP at 29. The superior court granted Earl's motion to file the amended complaint adding the negligence claim against Joseph and the negligent retention claim against the City.

In the amended complaint, Earl stated that when Joseph was initially interviewed, "he maintained that he was carrying three ammunition magazines that night, that each one had the capacity to hold 13 bullets, and that all three were filled to capacity." *Id.* at 446. However, the police practices expert discovered that "[o]ne live bullet was missing and unaccounted for." *Id.* at 447. This discovery prompted Earl to further investigate Joseph's background.

_____

[5] Earl did not assert that Joseph shot Salyers.

According to the complaint, in investigating Joseph's background, Earl discovered that in 2009, Joseph's then-wife "reported to the Tacoma Police Department that Joseph had threatened to shoot and kill her, to shoot and kill his fellow police officer Steven Storwick, and to shoot and kill himself." *Id.* According to the complaint, during the incident involving his then-wife, Joseph struck his gun against a door frame. Joseph was arrested and charged with assault in the second degree and felony harassment.[6] According to the complaint, the prosecutor moved to dismiss the felony charges, "stating that the case was more appropriately handled in District Court." *Id.* at 448. The superior court granted the motion, and a misdemeanor charge was filed against Joseph in district court. "Joseph requested and received a deferred prosecution," after which the charge was dropped and the court later granted Joseph's petition to expunge his arrest records. *Id.*

Earl now argues that "[i]t was unreasonable and negligent for the City of Tacoma to continue to employ Joseph as a police officer" after learning of his "criminal behavior . . . reckless handing of his gun . . . [and] that Officer Joseph was psychologically and emotionally disturbed enough to threaten to kill himself and others." *Id.* at 448-49. Earl asserts in the amended complaint that "[b]y committing several acts, including but not limited to the smashing of his gun against her window, Officer Joseph negligently escalated the confrontation between Salyers and the police, and his negligent acts were proximate causes of the wrongful death of [Salyers]." *Id.* at 452. In regard to the negligent retention claim, Earl asserts that:

> The City of Tacoma negligently failed to fire Officer Joseph after learning of his criminal assault on his wife, his criminal threat to kill his fellow police officer, his emotional and psychological instability and his threat to kill himself, and his reckless handling of a gun by smashing it against a door frame. Tacoma's negligent retention of Joseph as a police officer employee of City was a proximate cause of the wrongful death of Jacqueline Salyers.

---

[6] *See* Br. of Resp't, App. D.

*Id.* at 455.

The City moved for the court to reconsider its order granting Earl's motion to file an amended complaint, asserting that Earl's claims of newly discovered evidence were without merit and prejudiced the City. The City argued that the court's order was contrary to controlling case law which, according to the City, required employees to be acting outside the scope of employment in order for a negligent retention claim to be actionable. The City argued that according to precedent, a negligent retention claim is not viable alongside a claim of vicarious liability, as it would be redundant. The trial court denied the motion.

*2. Motion for Discretionary Review*

In July 2023, the City filed a motion to certify an order for discretionary review and to stay proceedings. The proposed question asked whether the court's order granting Earl's motion to amend her complaint " 'involve[d] a controlling question of law as to which there is a substantial ground for a difference of opinion and that the immediate review of the order may materially advance the ultimate termination of litigation.' " *Id.* at 461 (quoting RAP 2.3(b)(4)).

In August 2023, the superior court granted the motion in part, finding "that there is a conflict between decisions of the Washington State Appellate Courts and the Washington State Supreme Court as it pertains to claims of negligent retention." *Id.* at 825. The court certified the following issue for appeal:

> Is a claim for negligent retention actionable where the Plaintiff has asserted claims which, if proven, would impose liability against the employer under the doctrine of respondeat superior and where there is no allegation that the employees were acting outside the course and scope of their employment at the time of the alleged tortious conduct?

*Id.* at 826. We granted discretionary review.

7

ANALYSIS

This case comes before us on the certified question from the trial court set forth above. When Earl brought this amended complaint on behalf of the estate asserting negligence claims against Campbell and Joseph and vicarious liability claims against the City, the City, in its answer to the complaint, conceded that both Campbell and Joseph were acting "within the course and *scope* of [their] employment at the time of the events that give rise to this lawsuit." *Id.* at 806 (emphasis added).[7] It is this feature of the case that answers the certified question from the trial court. We hold that where an employer agrees that it would be vicariously liable because the employee was acting within the scope of employment when the employee committed the allegedly negligent act on which the lawsuit is based, a negligent retention claim is redundant and not actionable.

We review certified questions de novo, as they involve questions of law. *Wright v. Lyft, Inc.*, 189 Wn.2d 718, 722, 406 P.3d 1149 (2017). The doctrine of vicarious liability, or respondeat superior, "imposes liability on an employer for the torts of an employee who is acting on the employer's behalf." *Niece v. Elmview Grp. Home*, 131 Wn.2d 39, 48, 929 P.2d 420 (1997). However, an employer is not vicariously liable when an employee "steps aside from the employer's purposes in order to pursue a personal objective." *Id.* While "the scope of employment limits the employer's vicarious liability. . . . the scope of employment is not a limit on an employer's liability for a breach of its own duty of care." *Id.*

---

[7] The City's answer contains a typo in which the words "Scott Campbell" appear in paragraph 92 in which the City intended to say "Aaron Joseph."

Apart from vicarious liability, an employer has a limited duty "to foreseeable victims, to prevent the tasks, premises, or instrumentalities entrusted to an employee from endangering others," even when an employee is acting outside the scope of employment at the time. *Id.* The causes of action for negligent hiring and retention arise out of this duty. *Id*. Negligent hiring and retention claims are based on the theory that it was the employer who wronged the injured party, and these claims are entirely independent of the liability an employer might have under the doctrine of respondeat superior. *Id*.

In negligent retention claims, "[a]n employer may be liable for harm caused by an incompetent or unfit employee if (1) the employer knew, or in the exercise of ordinary care, should have known of the employee's unfitness before the occurrence; and (2) retaining the employee was a proximate cause of the plaintiff's injuries." *Betty Y. v. Al-Hellou*, 98 Wn. App. 146, 148-49, 988 P.2d 1031 (1999). To establish proximate cause, the plaintiff must show that the injured party was injured by some negligent or other wrongful act of the employee alleged to have been negligently hired or retained. *Scott v. Blanchet High Sch*., 50 Wn. App. 37, 43, 747 P.2d 1124 (1987). Specifically, the plaintiff must show that the employee's poor performance that was the proximate cause of plaintiff's injury was also the same type of poor performance that the employer was aware of. *Smith v. Sacred Heart Med. Ctr*., 144 Wn. App. 537, 544, 184 P.3d 646 (2008); *See Anderson v. Soap Lake Sch. Dist*., 191 Wn.2d 343, 360-61, 364, 423 P.3d 197 (2018).

Initially, we note that the superior court certified this question because it opined "that there is a conflict between decisions of the Washington State Appellate Courts and the Washington State Supreme Court as it pertains to claims of negligent retention." CP at 825. Because the court of appeals is bound by supreme court precedent, we first address the supreme court cases cited by the

9

parties and the trial court. Second, we examine the relevant court of appeals cases that the superior court and Earl identified as decisions that supposedly conflict with each other and with supreme court precedent.

## I. SUPREME COURT CASES

Earl cites *Estes v. Brewster Cigar Co.*, 156 Wash. 465, 287 P. 36 (1930), *abrogated by Mancini v. City of Tacoma*, 196 Wn.2d 864, 479 P.3d 656 (2021), in support of her assertion that a negligent retention claim brought in a case where the employer agrees that the employee was acting within the scope of employment is not redundant to a vicarious liability claim. In *Estes*, Mr. Daymude, an employee of the Brewster Cigar Company, was accused of causing an assault against a customer of Brewster. 156 Wash. at 466-67. Estes alleged that Brewster, in addition to selling cigars, conducted an unlawful gambling game (a dice game) at its store "whereby cigarettes, cigars, tobacco and other merchandise of value were bet, wagered and hazarded upon chance." *Id.* at 467. Estes alleged that on a particular date he was induced to engage in this dice game by Daymude, and that after losing the game he attempted to leave the store. *Id.* Upon leaving the store, Daymude pursued Estes and screamed such things as "Thief" and "robber", causing a police officer who heard the commotion to attempt apprehension of Estes. *Id.* The police officer shot and wounded Estes during the pursuit. *Id.*

Estes sued both Daymude and Brewster, claiming that Brewster was vicariously liable for Daymude's actions. *Id.* at 466, 468. The supreme court held that because Daymude was not acting within the scope of his employment when he pursued Estes without cause, Brewster was not vicariously liable for Daymude's wrongful act. *Id.* at 472-74. The court also observed,

> There is a line of cases, to which we have lent sanction in *Matsuda v. Hammond*, 77 Wash. 120, 137 [P.] 328, 51 L. R. A. (N. S.) 920, to the effect that a

master is liable for the unauthorized wrongful acts of his servant, if he continues the servant in his employment after he has knowledge that the servant has committed or is liable to commit wrongful acts while in the performance of the duties for which he is employed. *But this consideration is not present here*. There is no allegation in the complaint in this instance that the master had knowledge of any such tendency on the part of the servant.

*Id.* at 473-74 (emphasis added).

In her brief Earl makes much of this passage, suggesting that it constitutes a holding that a negligent retention claim is viable alongside a vicarious liability claim.[8] We find no such holding in *Estes*. First, this passage is *dictum*. Estes' claim against Brewster was solely one of vicarious liability based on his assertion that Daymude was acting within the scope of employment in committing the wrongful act. *Id.* at 472-73. Second, the *Estes* court *rejected* Estes' assertion that Daymude was acting within the scope of employment and accordingly held that Brewster was not vicariously liable for Daymude's wrongful act. *Id*. at 473. As such, there was no occasion for the *Estes* court to address the question of when the employee is, undisputedly, acting within the scope of employment, the employer is separately liable for a negligent hiring claim. *Id*. at 473-74. At most, this passage from *Estes* is an acknowledgment that a cause of action for negligent hiring exists within the law—a proposition the City does not dispute in this case. *See Peoples v. Puget*

_____

[8] Later in her brief, Earl claims that "In *Estes*, the Supreme Court specifically recognized a negligent retention claim *and* a vicarious liability claim against an employer are not 'incongruent.' " Br. of Resp't at 51. She cites to page 471 of *Estes*. The majority of the text on page 471 was overruled in part in 2021. The most relevant portion of text on the page Earl cites to states: " 'There may be more than one proximate cause for the same injury. The negligence of different persons, though otherwise independent, may concur in producing the same injury. In such a case, all are liable. They may be held either jointly or severally.' " *Estes*, 156 Wash. at 471 (quoting *Hellan v. Supply Laundry Co*., 94 Wash. 683, 686, 163 P. 9 (1917)). Again, we disagree with Earl's contention that *Estes* holds that a negligent retention claim is viable alongside a vicarious liability claim when it has been established that the employee acted within the scope of employment in committing the wrongful act.

*Sound's Best Chicken!, Inc.,* 185 Wn. App. 691, 702, 345 P.3d 811 (2015) ("The Supreme Court has twice cited *Matsuda* as recognizing liability for negligent hiring or retention.").

Moreover, *Matsuda v. Hammond*, 77 Wash. 120, 137 P. 328 (1913), cited by *Estes* and by Earl in her brief, does not aid our analysis of the certified question. In *Matsuda*, the employer (Hammond) was sued for vicarious liability for the act of his employee (Bell) in assaulting Matsuda, a customer of Hammond, by punching Matsuda in the nose, causing it to break, while attempting to collect a debt owed to Hammond. *Id.* at 121. Unlike the City in the case at bar, Hammond disputed that her employee was acting within the scope of his employment during the commission of the wrongful act. *Id.* at 123. Our supreme court agreed with Hammond and held that Bell was *not* acting within the scope of his employment in assaulting Matsuda. *Id.* In its discussion, the court stated:

> An employer is liable for the unlawful and criminal acts of his employee only when he directly authorizes them, or ratifies them when committed; or, perhaps, continues an employee in his employment after he has knowledge that the employee has committed, or is liable to commit, unlawful acts while in the pursuit of his employer's business. The liability does not arise from a mere contract of employment to do a legitimate and lawful act.

*Id.*

Here again, Earl cites *Matsuda* for the proposition that an employer can be liable for the negligent retention of an employee when the employee inflicts harm on a third party. But the City does not dispute this proposition. Rather, the City contends that the fall back claim of negligent retention would only need to come into play where the employer *disputes* that its employee was acting outside the scope of employment or there has been a judicial finding to that effect. Because the employee in *Matsuda* was determined not to have been acting within the scope of employment in committing the wrongful act, *Matsuda*, like *Estes*, is distinguishable from this case.

In *La Lone v. Smith*, 39 Wn.2d 167, 168, 234 P.2d 893 (1951), which Earl cites repeatedly in her brief, a man named Trask was working as a janitor for a property management company at an apartment complex in Spokane. Trask, who was known to be alcohol dependent and to have assaulted a different tenant in the past, assaulted the plaintiff, Mr. La Lone. *Id.* at 169-70. La Lone brought suit against the property owner (Smith), as well as the property manager (Fancy). *Id.* at 168. Although Trask was named in the complaint, he was not served with the complaint and was dismissed from the action. *Id.* La Lone brought a claim of negligent retention against Smith and Fancy based on Trask's known history of drunken and assaultive behavior. *Id*. at 169-70. La Lone did not make a claim of vicarious liability. *Id*. at 171. Smith and Fancy argued on appeal that their retention of Trask as an employee was not the proximate cause of La Lone's injuries because "Trask turned aside from his duties as janitor to engage in a fight with [La Lone]." *Id.* In rejecting this claim, the supreme court noted that the trial court made an unchallenged finding that Smith and Fancy's retention of Trask was the proximate cause of La Lone's injuries. *Id.* The court further stated,

> In the instant case, the doctrine of *respondeat superior* is not involved, because the issue is whether appellants were negligent in their retention of Trask. The trial court found that they were, and that finding is accepted by us as an established fact.
> Our decisions in *Matsuda v. Hammond*, 77 Wash. 120, 137 Pac. 328; *Estes v. Brewster Cigar Co.*, 156 Wash. 465, 287 Pac. 36; and *Miller v. Mohr*, 198 Wash. 619, 89 P.[2d] 807, while not directly in point, recognize the legal principle that the negligent employment or retention of an incompetent employee makes the employer liable for injuries inflicted upon a third party by such employee.

*Id.*

Earl contends that *La Lone* stands for the proposition that a negligent retention claim is not redundant to a vicarious liability claim. Earl states "[T]he fact that Trask assaulted La Lone while

Trask was acting *within* the scope of his employment did not preclude employer liability for negligent retention." Br. of Resp't. at 19. This statement not only mischaracterizes the holding in *La Lone*, but entirely misses the point. In *La Lone*, the plaintiff chose to pursue a claim against only the employer, and only for negligent retention. La Lone did not also pursue a claim of vicarious liability. *La Lone*, 39 Wn.2d at 168. *La Lone* does not stand for the proposition that where a plaintiff pursues a claim against a defendant for a wrongful act committed in the course of employment, and also pursues a claim of vicarious liability against the employer for that same act *for which the employer stipulates was committed in the course of employment*, that the plaintiff can simultaneously pursue a claim of negligent retention against the employer.

Earl also relies on *Niece*, which is easily distinguishable from this case and the certified question it spurred. The issue in *Niece* was the special relationship between a group home and its vulnerable, disabled resident, in a claim of negligent protection. *Niece*, 131 Wn.2d at 43, 46. There was no allegation that the group home's employee was acting within the scope of his employment. The supreme court, in holding that Elmview had a special relationship with Niece triggering a duty of care to protect Niece from "all foreseeable harms," distinguished the duty arising from this special relationship from the doctrine of vicarious liability:

> Vicarious liability, otherwise known as the doctrine of respondeat superior, imposes liability on an employer for the torts of an employee who is acting on the employer's behalf. Where the employee steps aside from the employer's purposes in order to pursue a personal objective of the employee, the employer is not vicariously liable. Whether or not the employer has any particular relationship to the victim of the employee's negligence or intentional wrongdoing, the scope of employment limits the employer's vicarious liability. However, the scope of employment is not a limit on an employer's liability for a breach of its own duty of care.

> Even where an employee is acting outside the scope of employment, the relationship between employer and employee gives rise to a limited duty, owed by

14

an employer to foreseeable victims, to prevent the tasks, premises, or instrumentalities entrusted to an employee from endangering others. This duty gives rise to causes of action for negligent hiring, retention and supervision. Liability under these theories is analytically distinct and separate from vicarious liability. These causes of action are based on the theory that "such negligence on the part of the employer is a wrong to [the injured party], entirely independent of the liability of the employer under the doctrine of respondeat superior."

*Id.* at 48 (internal citations omitted) (quoting *Scott*, 50 Wn. App. at 43).

Earl treats this passage as somewhat of a smoking gun, as though it stands for the proposition that a plaintiff who was injured by the negligent act of an employee and to whom the employer, based on its admission that its employee acted within the scope of employment in committing the negligent act, is vicariously liable, can also pursue a claim of negligent retention for the same wrongful act. To arrive at this conclusion Earl ignores the context of the holding in *Niece*, which was about the application of the special relationship doctrine.

The court, having held that Elmview owed Niece an independent duty of care based on its special relationship with Niece, went on to address Niece's claim of negligent supervision. In addressing this claim, the court explained that

The theory of liability for negligent supervision is based on the special relationship between employer and employee, not the relationship between group home and resident.
. . . While an employer generally does not have a duty to guard against the possibility that one of its employees may be an undiscovered sexual predator, a group home for developmentally disabled persons has a duty to protect residents from such predators regardless of whether those predators are strangers, visitors, other residents, or employees.

*Id.* at 49.

The court stated that it was "unnecessary to resolve" the negligent supervision claim because of Elmview's "much broader" duty to Niece by virtue of its special relationship with her:

> The same evidence that would establish Elmview's negligence under a broad theory of negligent supervision will also establish its negligence in failing to protect Niece from all foreseeable harms. Niece's cause of action for negligent supervision thus *collapses into* her negligence claim based on Elmview's breach of its special relationship duty of care. We therefore find it unnecessary to determine whether Niece has presented a factually sufficient claim for negligent supervision.

*Id.* at 52 (emphasis added). Stated another way, Niece's negligent supervision claim was redundant to the negligent protection claim. *Id.* at 52, 59. *Niece* does not support Earl's contention in this case. Rather, it supports the City's argument that redundant claims are not actionable.

In *Anderson*, cited by the trial court, the plaintiff brought suit against the Soap Lake School District for negligent hiring, training, and supervision based on the actions of its girls' varsity basketball coach. *Anderson*, 191 Wn.2d at 352. The basketball coach served the plaintiff's daughter, a player on the girls' basketball team, as well as several other minors, alcohol at an evening party at his home. *Id.* at 348-49. After leaving the party, the plaintiff's daughter was killed in a single-car accident in which her boyfriend, who had also been served alcohol by the coach, had been driving. *Id.*

The court first discussed the negligent hiring and retention claims, noting that these claims failed at the outset due to Anderson's failure to produce "any evidence" that would support either of these claims. *Id.* at 357-58. Because "Anderson did not present a genuine issue of material fact regarding whether Soap Lake was negligent when it hired and retained"[9] the basketball coach and the claim therefore failed at the outset, the court did not go on to analyze the elements of these claims.

---

[9] *Anderson*, 191 Wn.2d at 359.

The court next discussed the negligent supervision and training claims. As to these claims, which are analytically distinct from negligent hiring and retention claims, the court found it necessary to determine whether the coach was acting within the scope of his employment before deciding whether Anderson had demonstrated a genuine issue of material fact. *Id.* at 360-61. The court stated:

> Even if we assume that Anderson presented sufficient evidence to create a genuine issue of material fact regarding the reasonableness of Soap Lake's training and supervision of Lukashevich, we still must determine whether Lukashevich was acting within the scope of his employment. This is because an action based on negligent training and supervision "is applicable *only* when the [employee] is acting outside the scope of his employment." RESTATEMENT (SECOND) OF TORTS § 317 cmt. a [(AM. LAW INST. 1965)] (emphasis added). If the employee is acting within the scope of his employment, then an employer is "vicariously liable under the principles of the law of Agency" instead. *Id.*

*Id.* at 361 (first alteration in original). The court concluded that the coach acted *outside* the scope of his employment and, as a result, proceeded to analyze "whether Anderson presented genuine issues of material fact to survive summary judgment on her negligent supervision claim." *Id.* at 363.

The trial court in the case at bar was confused about the import of *Anderson*'s failure to explicitly state that acting outside the scope of employment was an element, at least impliedly, of a negligent retention claim when it stated unequivocally that it is an element of both a negligent training and supervision claim. But this observation ignores that Anderson's initial failure to show that the school district had any reason to know, either when it hired or retained the coach, that he was inclined or likely to provide alcohol to underage students from the school negated the need for the court to explore this particular question.

After concluding its discussion of Anderson's negligent hiring, retention, training, and supervision claims, the court addressed Anderson's alternative claim that the school district was vicariously liable for the coach's conduct in serving alcohol to Anderson's daughter. *Id.* at 373. Because the coach had not acted within the scope of his employment, the court held that summary judgment on that claim was appropriate.

Although it may be tempting to conclude that the existence of a vicarious liability claim in *Anderson* demonstrates that claims for negligent retention and vicarious liability can coexist here, such a conclusion ignores the salient posture of this case: here, the City *concedes* that Joseph acted within the scope of his employment in all aspects of his interaction with Salyer. Unlike in *Anderson*, the scope of employment question is neither contested nor a matter that requires determination by either the trial court or a jury.[10]

In summary, none of the Washington Supreme Court cases cited by Earl or the trial court support the assertion that when an employer stipulates that its employee acted within the scope of employment in committing the allegedly negligent act, and would thereby be vicariously liable in the event the trier of fact finds the employee acted negligently, that a separate claim of negligent retention is actionable and not redundant. We next consider the court of appeals cases cited by the trial court and the parties.

---

[10] It is axiomatic that where an employer both *disputes* that its employee acted within the scope of employment, thereby seeking to evade vicarious liability, and disclaims liability under the theories of negligent hiring, retention, training, or supervision, the plaintiff is permitted to pursue alternate or incongruous theories of liability.

II. COURT OF APPEALS CASES

In *LaPlant v. Snohomish County*, 162 Wn. App. 476, 477-78, 271 P.3d 254 (2011), cited by the parties, sheriff's deputies pursued a stolen vehicle in which LaPlant and another plaintiff, Pennamen, were passengers. During the pursuit, the driver lost control of the car and collided with a brick sign, causing injuries to LaPlant and Pennamen. *Id.* LaPlant and Pennamen sued Snohomish County alleging negligence based on vicarious liability. *Id.* at 478. Similar to this case, LaPlant and Pennamen were permitted to amend their complaint to add claims of negligent training and supervision. *Id.* Division One of this court granted discretionary review to decide "whether a negligent training and supervision claim should be dismissed when an employer, against whom vicarious liability is also alleged, admits that its employees' allegedly negligent conduct occurred within the scope of employment." *Id.* at 477. Thus, the issue in *LaPlant* is nearly identical to the issue we are asked to decide in this case, with the minor difference that this case involves a claim of negligent retention rather than negligent supervision and training.

The court first noted that a negligent supervision claim "requires a plaintiff to show that an employee acted *outside* the scope of [their] employment." *Id.* at 479. "But when an employee commits negligence within the scope of employment, a different theory of liability—vicarious liability—applies." *Id.* at 479-80. The court cited its earlier opinion in *Gilliam v. Department of Social & Health Services, Child Protective Services*, 89 Wn. App. 569, 950 P.2d 20 (1998), another negligent supervision case. *LaPlant*, 162 Wn. App. at 480. In *Gilliam*, the court reiterated that "[a]n employer is generally vicariously liable for the negligent acts of an employee conducted within the scope of employment," but that when an employee causes harm through acts done outside the scope of employment, the employer may be liable for negligent supervision. *Gilliam*,

89 Wn. App. at 584-85. In *Gilliam*, as in *LaPlant*, the employer conceded that the employee acted within the scope of employment and thus, the claim of negligent supervision was redundant: "If Gilliam proves Morrow's liability, the State will also be liable. If Gilliam fails to prove Morrow's liability, the State cannot be liable even if its supervision was negligent." *Id.* at 585.

Similarly, in *LaPlant*, the court held that vicarious liability and negligent supervision claims are redundant where the employer admits that its employee acted within the scope of employment in committing the negligent act:

> The rationale in *Gilliam* applies here because the County agreed that it would be vicariously liable for any negligence on the part of the deputies. Both causes of action rest upon a determination that the deputies were negligent and that this negligence was the proximate cause of LaPlant's injuries. If LaPlant establishes the underlying tort, the County automatically will be liable to the same extent as the deputies. If LaPlant fails to establish that the deputies acted negligently, the County cannot be liable, even if it was negligent in training and supervising them. As a result, LaPlant's claim for negligent supervision, under these facts, is not only improper because the County did not disclaim liability for the deputies' actions, it is also superfluous. The trial court should have granted the County's motion to dismiss.

*LaPlant*, 162 Wn. App. at 481.[11]

In *Evans v. Tacoma School District No. 10*, 195 Wn. App. 25, 47, 380 P.3d 553 (2016), cited by the trial court, our division similarly applied this reasoning regarding the relationship

---

[11] Claims involving negligent hiring or retention are distinct from claims involving negligent supervision or training. "An employer can be liable for negligent hiring or retention for failing to exercise ordinary care by hiring or retaining an employee known to be unfit. . . . Negligent hiring occurs at the time of hiring, while negligent retention occurs in the course of employment." *Evans v. Tacoma Sch. Dist. No*. 10, 195 Wn. App. 25, 46-47, 380 P.3d 553 (2016) (internal citation omitted). Employer liability in claims of negligent supervision or training "arises when the employer knows or has reason to know that the employee presented a risk of danger to others. . . . The employer has a duty to 'prevent the tasks, premises, or instrumentalities entrusted to an employee from endangering others.' " *Id*. at 47 (internal citation omitted) (quoting *Niece*, 131 Wn.2d at 48).

between negligent retention or supervision claims and vicarious liability claims. In *Evans*, the plaintiff brought claims for vicarious liability as well as negligent hiring, retention, training, and/or supervision. *Id.* at 30. Significantly, the employer in *Evans*, unlike the employers in *LaPlant*, *Gilliam*, and this case, did *not* concede that its employee, who had sexually abused a student, was acting within the scope of employment. *See, e.g., id.* at 35, 37, 40. Citing the reasoning in *Niece* and *LaPlant*, we explained:

> The causes of action for negligent hiring, retention, supervision and training are analytically different from vicarious liability. These claims arise when the employee is acting outside the scope of employment. They are based on the concept that the employer's *own* negligence is a wrong to the injured party, independent from the employer's liability for its employee's negligence imputed by the doctrine of respondeat superior. In fact, an injured party generally cannot assert claims for negligent hiring, retention, supervision or training of an employee when the employer is vicariously liable for the employee's conduct.

*Id.* at 47 (internal citations omitted).

In *Hicks v. Klickitat County Sheriff's Office*, 23 Wn. App. 2d 236, 248, 515 P.3d 556 (2022), we again affirmed this understanding of the relationship between vicarious liability, negligent retention, and scope of employment. *Hicks* involved a negligent retention claim against the Department of Social and Health Services regarding a social worker's negligent investigation of a child abuse report. *Id.* at 238. Relying on *Evans*, we stated:

> Under the doctrine of respondeat superior, an employer can be vicariously liable for its employee's torts committed *within* the scope of employment. In *Evans*, the court held that claims for negligent hiring, retention, supervision, and training, which arise from conduct occurring *outside* the scope of employment, are analytically different from vicarious liability. An injured party generally cannot assert negligent retention claims when the employer is vicariously liable for the employee's conduct.

*Id.* at 248 n.9 (internal citations omitted).

We explained in *Hicks* that "[n]egligent retention claims generally arise when an employee is acting outside the scope of their employment," and held that because Hicks failed to demonstrate that the social worker "acted outside the scope of employment, . . . Hicks' negligent retention claim fails as a matter of law." *Id.* at 248.

The final court of appeals case warranting discussion because Earl significantly relies on it is *Carlsen v. Wackenhut Corp.*, 73 Wn. App. 247, 868 P.2d 882 (1994), although this reliance is not well taken. *Carlsen* contains no discussion of the relationship between vicarious liability and claims of negligent hiring or retention. Rather, the plaintiff in *Carlsen*, who had been sexually assaulted by a concert worker (Futi) employed by Wackenhut at the Tacoma Dome, asserted claims of negligence for which, she alleged, Wackenhut was vicariously liable, as well as negligent hiring and supervision of Futi. *Id.* at 249. The trial court dismissed the claims of negligent hiring and supervision on summary judgment and we reversed, finding that the plaintiff demonstrated a genuine issue of material fact as to the those claims. We said this in footnote 4:

> The trial court's order on summary judgment did not dismiss Carlsen's lawsuit against Wackenhut. Neither did it indicate that there was no just reason to delay an appeal. Although Wackenhut's counsel state in its brief that Carlsen's lawsuit, insofar as it was based on respondeat superior, had been dismissed, it does not cite to the record to support that statement. Furthermore, the trial court's order belies that assertion. . . . The order, therefore, is not appealable pursuant to RAP 2.2(d); . . . Nevertheless, we have chosen to review the trial court's order pursuant to the provisions of RAP 2.3.

*Id.* at 252 n.4 (some internal citations omitted).

In other words, the defendant in *Carlsen* did not ask us to examine the relationship between vicarious liability and negligent hiring or supervision because the defendant in that case did not realize the vicarious liability claim remained a part of the case. Upon realizing the issue, we

acknowledged that the order was not appealable and converted our review to discretionary review under a different rule of appellate procedure. *Id.*

Earl nevertheless asserts that in *Carlsen*, we held that Futi was acting within the *scope* of his employment when he sexually assaulted the plaintiff. Earl focuses on the following quotations from *Carlsen*: " 'Futi was, in a real sense, responsible for protecting young concert goers' and 'for ushering patrons to their seats.' " Br. of Resp't at 23 (quoting *Carlsen*, 73 Wn. App. at 255-56). These statements do not reflect the *Carlsen* court determining that Futi was acting within the scope of his employment as Earl contends. Rather, these statements were made within the context of our holding that a genuine issue of material fact existed about whether Wackenhut should have more closely investigated Futi's background before hiring him. We stated,

> Although Futi's responsibilities were, arguably, not so great as those delegated to the employees in *Easley* or *Welsh*, in that he was not guarding valuable personal property and was not authorized to carry a weapon, Futi was, in a real sense, responsible for protecting young concert goers. Viewing the evidence most favorably to Carlsen, as we must, there is at least an inference that Wackenhut held Futi out as more than a mere ticket taker.
> . . . .
> . . . A jury might well conclude that it was reasonable for concert patrons to look upon Futi as one authorized to perform security functions, and that, therefore, Wackenhut should have more extensively examined Futi's background before hiring him. The need for such a determination by a jury seems especially compelling in light of the limited information and inconsistencies in Futi's applications for employment. This additional investigation might well have disclosed Futi's prior juvenile record.

*Carlsen*, 73 Wn. App. at 255-56.[12, 13]

*Carlsen* does not stand, as Earl contends, for the proposition that a negligent hiring or retention claim is not redundant to a vicarious liability claim when an employee undisputedly acts within the scope of employment in committing the wrongful act. Again, the vicarious liability claim in *Carlsen* was not before us on appeal. *Id.* at 252 n.4.

III. SECONDARY AUTHORITY

Earl argues that *Dold v. Snohomish County*, No. 2:20-CV-00383JHC, 2023 WL 1818139, at 2 (W.D. Wash. Feb. 7, 2023) (court order), an order on reconsideration from the United States District Court for the Western District of Washington, is instructive here.[14] The *Dold* court sought to answer whether, under Washington law, there is "outside the scope of employment" element in negligent retention claims. In *Dold*, it must be noted, no negligence claim was brought against the employee that would have triggered vicarious liability on the part of the employer. *Id.* Within this context, *Dold* distinguished *Hicks*, stating "*Hicks* answered a different question than the one presented here." *Id.* The court explained,

> Unlike in *Hicks*, there is no direct negligence claim that could give rise to vicarious liability against the County. *Under such circumstances*, the Court believes that the Washington Supreme Court would not adopt a "scope of employment" requirement

---

[12] Referencing *Easley v. Apollo Detective Agency, Inc.*, 69 Ill. App. 3d 920, 387 N.E.2d 1241 (1979) and *Welsh Manufacturing, Division of Textron, Inc. v. Pinkerton's, Inc.*, 474 A.2d 436 (R.I. 1984).

[13] We note that "Washington courts uniformly have held as a matter of law that an employee's intentional sexual misconduct is not within the scope of employment." *Evans*, 195 Wn. App. at 38.

[14] We note that "[f]ederal cases are not binding on this court, which is 'free to adopt those theories and rationale which best further the purposes and mandates of our state statute.' " *Kumar v. Gate Gourmet, Inc.*, 180 Wn.2d 481, 491, 325 P.3d 193 (2014) (quoting *Grimwood v. Univ. of Puget Sound, Inc.*, 110 Wn.2d 355, 361-62, 753 P.2d 517 (1988), *overruled in part by Mikkelsen v. Pub. Util. Dist. No. 1 of Kittitas County*, 189 Wn.2d 516, 404 P.3d 464 (2017)).

for negligent retention claims, at least in cases where there is no remaining claim
for vicarious liability.

*Id*. (emphasis added). Even if *Dold* were binding on this court, the facts in *Dold* are distinguishable

from those in Earl's case because *Dold* did not involve a vicarious liability claim. We therefore

find *Dold* unhelpful and unpersuasive.[15]

IV. EARL'S ARGUMENTS AND THE CERTIFIED QUESTION

The certified question asks:

Is a claim for negligent retention actionable where the Plaintiff has asserted claims
which, if proven, would impose liability against the employer under the doctrine of
respondeat superior and where there is no allegation that the employees were acting
outside the course and scope of their employment at the time of the alleged tortious
conduct?

CP at 826.

Earl contends that the claim of negligent retention is actionable by focusing on the wrong

question, to wit, whether the tort of negligent retention contains an "outside the scope of

employment" *element. See generally* Br. of Resp't at 12-44. But the certified question does not ask

what the elements are of negligent retention. Rather, it asks whether the negligent retention claim

is "actionable," meaning, not redundant or superfluous, when coupled with a vicarious liability

---

[15] We also disagree with *Dold's* analysis. Relying on *Anderson*, the court stated that "the test adopted in *Anderson* does not require that the employee's conduct occur outside the scope of employment." *Dold,* 2023 WL 1818139, at 2. The court continued: "Reading *Anderson* as a whole, the most reasonable inference is that the Washington Supreme Court would not adopt an 'outside the scope of employment' requirement for negligent retention claims." *Id*. In reaching this conclusion, the *Dold* court ignores key language from *Anderson*. As we noted above, the *Anderson* court explicitly stated that even if Anderson succeeded in presenting a genuine issue of material fact regarding her negligence claims, the court would still need to determine whether the coach was acting within the scope of employment, "because an action based on negligent training and supervision 'is applicable *only* when the [employee] is acting outside the scope of his employment.' " *Anderson*, 191 Wn.2d at 361 (alteration in original).

claim in which there is no question that the employee was acting within the scope of employment during commission of the negligent act.

The cases outlined above plainly answer this question in the negative. We hold that a claim for negligent retention is redundant and not actionable in cases where the following two factors are present: (1) the plaintiff brings a negligence claim against an employee as well as a vicarious liability claim against the employer, and; (2) there is no genuine issue of material fact that the employee acted within the scope of employment in the commission of the allegedly negligent act (either because the employer admits the employee acted within the scope of employment or a reasonable fact finder could reach but one answer to this question).[16, 17]

Logically, there is no need to pursue a claim for negligent retention when, as Earl concedes, the negligent retention claim against the City depends on the jury finding that Joseph acted

---

[16] *G.M. v. Olympia Kiwanis Boys Ranch*, 30 Wn. App. 2d 685, 692, 548 P.3d 548, *review denied*, 3 Wn.3d 1024 (2024) ("Issues of fact may not be resolved on summary judgment unless, based on the evidence presented, reasonable minds can reach only one conclusion.").

[17] Earl points us to 6 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 15.04 (7th ed. 2022) (WPI), for support, stating "If Tacoma's argument that Earl cannot proceed simultaneously on both vicarious liability and employer liability for its own negligence were to be accepted, that would render WPI 15.04 utterly meaningless in all cases where the concurrent tortfeasors were a negligent employee and a negligent employer." Br. of Resp't at 50. But Earl ignores the note included with this instruction, which states: "Do not use this instruction if the third person was acting as an agent of either the plaintiff or defendant." WPI 15.04. As the note indicates, this instruction does not apply to Earl's negligent retention claim, as Joseph was acting as an agent of the City.

negligently—the same finding the jury must make for the vicarious liability claim.[18] Moreover, Earl also concedes that she cannot recover additional damages on the negligent retention claim should the jury make the necessary finding that Joseph acted negligently (which will trigger the City's vicarious liability). Thus, Earl effectively concedes she can get no additional benefit out of the negligent retention claim in light of her decision to pursue a negligence claim against Joseph.

The negligent retention claim Earl seeks to pursue is superfluous to the vicarious liability claim in light of there being no question that Joseph was acting within the scope of his employment in the commission of the allegedly negligent act and we hold that she cannot pursue this claim alongside her vicarious liability claim.

---

[18] During oral argument, Earl's counsel cited negligent training as an example of a claim that can coexist with a claim of negligence when the employer would also be vicariously liable. Negligent training is a unique claim that stands in contrast to negligent hiring, retention, and supervision claims. Whereas a negligent hiring, retention, or supervision claim depends upon a finding that the employee acted negligently—a key feature that renders these claims redundant when brought alongside a negligence claim in which the employee acted within the scope of employment—a negligent training claim against the employer can survive even where the trier of fact determines the employee did not act negligently. Consider, for example, a law enforcement officer who accidentally causes the death of a pedestrian during a pursuit. If the officer had been trained to conduct a pursuit in spite of traffic conditions that would render it dangerous to do so, and followed that training to the letter in conducting the pursuit that resulted in the death of the pedestrian, a jury could reasonably conclude that the officer was not negligent. It does not follow, however, that the employer should escape liability for training that is arguably negligent and was the proximate cause of the pedestrian's death. Although counsel for Earl was correct in identifying negligent training as a unique type of claim that is potentially not susceptible to a finding of redundancy when the employee acted within the scope of employment, this has no bearing on the claim at issue here.

CONCLUSION

We hold that Earl's negligent retention claim fails as a matter of law because it is superfluous in light of the fact that Joseph was acting within the scope of employment and Earl was therefore able to bring a vicarious liability claim against the City regarding Joseph's allegedly negligent conduct. We reverse the superior court's decision allowing Earl to amend her complaint to add a claim of negligent retention.

CRUSER, C.J.

We concur:

MAXA, J.

GLASGOW, J.